570

51 A.3d 195

**COMMONWEALTH of Pennsylvania, Appellee**

v.

**George Ivan LOPEZ, Appellant.**

Supreme Court of Pennsylvania.

Aug. 20, 2012.

Jules Epstein, Philadelphia, Jonathan Howard Feinberg, Kairys, Rudovsky, Messing & Feinberg, for George Ivan Lopez.

Christopher D. Carusone, PA Office of Attorney General, Philadelphia, Kelly M. Sekula, Lancaster County District Attorney's Office, Amy Zapp, PA Office of Attorney General, Harrisburg, for Commonwealth of Pennsylvania.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, ORIE MELVIN, JJ.

## ORDER

PER CURIAM.

**AND NOW,** this 20th day of August, 2012, the order of the Court of Common Pleas of Lehigh County denying appellant's second request for collateral relief is hereby **AFFIRMED,** as appellant's petition is time-barred.

■ A PCRA petition must be filed within one year of the date judgment becomes final, unless a petitioner alleges and proves one of the following:

(i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;

(ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

(iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S. § 9545(b)(1). Furthermore, "[a]ny petition invoking an exception ... shall be filed within 60 days of the date the claim could have been presented." *Id.,* § 9545(b)(2). Be-

cause these "timeliness requirements are mandatory and juris-
dictional in nature, no court may properly disregard or alter
them in order to reach the merits of the claims raised in a
PCRA petition that is filed in an untimely manner." *Com-
monwealth v. Murray*, 562 Pa. 1, 753 A.2d 201, 203 (2000)
(citations omitted).

■  Here, appellant cannot prove an exception to the
PCRA time-bar.  Information related to trial counsel's disci-
plinary issues was publicly available for years, including when
appellant's first PCRA petition was being prepared.  As these
facts were easily discoverable and in the public record for
longer than 60 days before this petition was filed, the petition
is time-barred, and we lack jurisdiction to address the merits.

Jurisdiction relinquished.

Justice ORIE MELVIN did not participate in the decision
of this case.

Chief Justice CASTILLE files a concurring statement.

Justice McCAFFERY files a concurring statement.

Justice SAYLOR does not wholly agree with the terms of
the per curiam order and, therefore, would simply enter a per
curiam affirmance.

Chief Justice CASTILLE, concurring.

I join the Court's *per curiam* affirmance of the denial of
PCRA [1] relief, on grounds that the serial petition in this case
was time-barred.  The PCRA claim at issue—apparently pur-
sued here so that appellant's federal *habeas corpus* petition
can remain in stasis—seeks to innovate a new duty for trial
counsel based upon purely personal circumstances, unrelated
to the client's cause, implicating attorney disciplinary proceed-
ings.  This claim qualifies for no PCRA time-bar exception;
and in any event, since it seeks to condemn counsel retroac-
tively with the burden of a new duty, it is frivolous.

1.  Post Conviction Relief Act, 42 Pa.C.S. §§ 9541–9546.

Whenever possible, serial PCRA petitions should be disposed of, both here and below, quickly and summarily. The necessity for this approach is particularly acute in capital cases because of the incentive to pursue far-fetched claims merely to delay matters; our PCRA courts need to be mindful of this incentive. The petition here is premised upon a more than far-fetched claim of "newly-discovered evidence" that does not even relate to the trial facts. As was most likely the intention here, pendency of appellant's serial PCRA claim has only caused substantial delay in the administration of justice. In my view, the "new" "facts" that appellant forwards have nothing whatsoever to do with trial counsel's representation of him, but arise instead from mere speculation as to trial counsel's personal circumstances at the time of trial. As a matter of law, these "facts" cannot support a cognizable claim of an "actual conflict of interest" that would render counsel ineffective.

On the time-bar question, appellant describes the documentation concerning disciplinary proceedings against his trial counsel as "newly discovered evidence" that "came to light only after new counsel was appointed to represent [appellant]" following completion of appellant's first round of PCRA review, which concluded eight years ago, in 2004. Appellant declares that this evidence was "never before available to [appellant] or his counsel." Piling speculation upon supposition, appellant declares that the fact of the disciplinary investigation alone proves that trial counsel's performance was hampered by an "actual" conflict of interest because counsel supposedly "rushed forward" with trial without sufficient investigation and preparation; did so in order to obtain "substantial counsel fees" before being suspended from the practice of law; and "tread[ed] lightly" in handling appellant's trial in anticipation of needing a favorable reference from the Lehigh County prosecutor's office. Appellant's Brief at 7–8.

The Commonwealth responds that appellant's petition was untimely, noting that the relevant disciplinary documentation became publicly available in, variously, 1989 (seven years before trial), 1997 (one year after trial, while appellant's direct

appeal was under way), and 2003 (during the pendency of appellant's first round of PCRA review, which concluded in July 2004). The Commonwealth cites testimony of the attorney who prosecuted appellant's first PCRA petition, who was aware that disciplinary action had been taken against appellant's trial counsel, and who evidently did not determine such action to be a basis to allege an actual conflict of interest in appellant's first PCRA petition. The Commonwealth argues that as a matter of law, information that has been public record for years simply cannot be deemed "new" for purposes of the PCRA time-bar, and particularly not with "newness" being measured by the moment appellant or new collateral counsel stumbles upon the public record. Commonwealth's Brief at 15–19.

In reply, appellant does not rely upon this Court's on-point decisional law concerning "new facts" and public records, but instead depends upon inapposite federal decisional law construing the "due diligence" provision of the federal Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). See 28 U.S.C. § 2244(d)(1)(D). Thus, appellant cites *Wilson v. Beard,* 426 F.3d 653 (3d Cir.2005), where the Third Circuit declined to read AEDPA's due diligence provision to mean that the "clock began ticking" on the defendant's claim under *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), on the day news broke of the existence of a training video allegedly establishing that a Philadelphia prosecutor had endorsed an alleged policy of discrimination in jury selection. Appellant acknowledges that in his case, information regarding the disciplinary actions against trial counsel was publicly disclosed and available, but argues that the "principle" expressed in *Wilson* concerning the non-jurisdictional federal time-bar in AEDPA should apply to constructions of the PCRA's jurisdictional time-bar, and we should hold that "it is not reasonable to expect [appellant] or his counsel" to discern the need to look into available disciplinary materials. Appellant's Reply Brief at 6–8.

For purposes of the PCRA time-bar, the question is whether records of disciplinary proceedings against appellant's trial

counsel may be considered facts unknowable to appellant until the day, years later, that one of his subsequent lawyers decided to look for the information. Our decisional law, which appellant ignores, counsels that the answer clearly is "No." We have repeatedly held that once sixty days elapsed from the public dissemination of the information forming the basis for the *Batson* claim in the Philadelphia jury selection cases, the nature and circumstances of the allegations could no longer be considered previously unavailable facts. *Commonwealth v. Fahy*, 598 Pa. 584, 959 A.2d 312, 316–17 (Pa.2008); *Commonwealth v. Hackett*, 598 Pa. 350, 956 A.2d 978, 984–85 (Pa.2008); *Commonwealth v. Marshall*, 596 Pa. 587, 947 A.2d 714, 721–23 (Pa.2008). *See also Commonwealth v. Whitney*, 572 Pa. 468, 817 A.2d 473, 478 (Pa.2003) (opinion study published in September 1998 edition of *Cornell Law Review* regarding supposed racial disparity in imposition of death penalty in Philadelphia did not constitute new evidence since statistics used to compile study were public record and therefore could have been known to defendant before he filed his third PCRA petition in July 1998).

*Commonwealth v. Fisher*, 582 Pa. 276, 870 A.2d 864 (Pa. 2005), also makes appellant's reliance on federal authority irrelevant. The defendant in *Fisher* had been tried and sentenced to death in 1989. At his trial, an expert for the Commonwealth testified regarding FBI methods of conducting compositional analysis of bullet fragments. The defendant's first round of collateral review concluded in 2002. In January 2004, he filed a second PCRA petition citing a National Academy of Science ("NAS") study critiquing the FBI's methods as imprecise and flawed; appended to the second petition was an affidavit from a retired FBI forensic metallurgist, including the metallurgist's *curriculum vitae* and list of publications. The defense's metallurgist opined that the methods used by investigators to connect the defendant to the bullets in the victim's body were scientifically unreliable. This Court concluded that the NAS study did not support the defendant's claim, but also that the metallurgist's affidavit did not cure the serial petition's untimeliness because the list of publications

included in the affidavit showed that criticism of the methods in question was "available and discoverable for more than two years" prior to when the defendant filed his second petition. 870 A.2d at 871.

This Court has also found that "new facts" arising from other matters of public judicial record are insufficient to trigger the new facts exception to the PCRA time-bar, even when those matters were not as widely publicized as the *Batson* jury selection allegations involved in *Wilson*. In *Commonwealth v. Hawkins*, 598 Pa. 85, 953 A.2d 1248 (Pa.2006) (Opinion Announcing Judgment of the Court), Hawkins alleged in a serial PCRA petition that the Commonwealth improperly concealed evidence that a "deal" had been made with a jailhouse informant who testified for the Commonwealth at Hawkins's first trial in 1990, which resulted in a death sentence. At the informant's subsequent sentencing proceedings in 1991, the assistant district attorney ("ADA") who prosecuted Hawkins testified on the informant's behalf and the informant evidently received a shorter term of imprisonment for having cooperated with the Commonwealth. In 1994, Hawkins was retried and again sentenced to death; his first round of PCRA review concluded in 2001. Then in 2003, Hawkins deposed the ADA regarding the informant and filed a second PCRA petition asserting a claim based on *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215(1963). This Court stated:

> As [the ADA] did testify at [the informant's] 1991 public sentencing, the testimony was in public records. While the 1990 and 1991 testimony did not reveal details of an "agreement," the facts upon which the claim is predicated are obviously present in the 1990 and 1991 testimony discussed above, and were certainly discoverable with any diligence at all. Since [the ADA's] 2003 deposition testimony simply reflects the same information [Hawkins] had known since 1990 and 1991, we reject [Hawkins's] claim that the facts in the 2003 deposition were previously unknown to [him] and

could not have been obtained a decade earlier with the exercise of due diligence.

*Hawkins,* 953 A.2d at 1255 (citation omitted).

Finally, in *Commonwealth v. Chester,* 586 Pa. 468, 895 A.2d 520 (Pa.2006), this Court rejected an argument similar to that raised by appellant in this appeal. In *Chester,* the defendant's trial resulted in a death sentence; his direct appeal concluded in 1991; and his first round of collateral review concluded in 1999. Thereafter, newly appointed counsel filed a second PCRA petition in 2001, claiming that the defendant's trial counsel had been arrested for driving under the influence ("DUI") shortly after entering his appearance on the defendant's behalf. The petition alleged that counsel therefore labored under a conflict of interest, and furthermore, the Commonwealth's failure to inform the defendant of trial counsel's DUI prosecution amounted to a *Brady* violation. The defendant argued that his serial petition was timely because it was filed within sixty days after new counsel discovered trial counsel's DUI. The PCRA court dismissed the defendant's serial petition as untimely and we affirmed:

> This Court has held that, for purposes of [Section] 9545(b)(1)(H), information is not "unknown" to a PCRA petitioner when the information was a matter of public record. Here, the fact that trial counsel was arrested for DUI was a matter of public record and, therefore, cannot be said to have been "unknown" to [the defendant] for purposes of the PCRA's "newly discovered evidence" exception to the PCRA's one year jurisdictional time-bar. Accordingly, the PCRA court properly determined that [the defendant's] argument under the "newly discovered evidence" exception fails.

*Chester,* 895 A.2d at 523 (citations and footnote omitted).

No argument has been forwarded by appellant, here or below, to acknowledge, much less distinguish, this Court's consistent precedent concerning public records and public information. Under this authority, however, which appellant ignores, his serial PCRA petition is plainly time-barred.

Even assuming the petition is not time-barred, appellant's "new facts" conflict of interest claim is frivolous. The standard for analyzing claims of an attorney's conflict of interest in the context of criminal defense derives from the U.S. Supreme Court's opinion in *Cuyler v. Sullivan*, 446 U.S. 335, 349–50, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). In that case, two privately retained attorneys represented three accomplices in separate murder trials. Sullivan was first to be tried. He was found guilty and sentenced to life imprisonment, but his two co-defendants were subsequently both acquitted. On non-deferential federal *habeas corpus* review in that pre-AEDPA case, the Third Circuit found that certain of Sullivan's attorneys' actions "raised a possibility of conflict sufficient to prove a violation of Sullivan's Sixth Amendment rights." *Id.* at 340, 100 S.Ct. 1708 (recounting procedural background of case). But, the U.S. Supreme Court vacated the Third Circuit's ruling in an opinion authored by Justice Lewis Powell: "We hold that the possibility of conflict is insufficient to impugn a criminal conviction. In order to demonstrate a violation of his Sixth Amendment rights, a defendant must establish that an actual conflict of interest adversely affected his lawyer's performance." *Id.* at 350, 100 S.Ct. 1708.

In line with *Cuyler*, this Court has consistently held as follows with regard to claims asserting a criminal defense attorney's conflict of interest:

An appellant cannot prevail on a preserved conflict of interest claim absent a showing of actual prejudice. Nevertheless, we presume prejudice when the appellant shows that trial counsel was burdened by an actual—rather than mere potential—conflict of interest. To show an actual conflict of interest, the appellant must demonstrate that: (1) counsel actively represented conflicting interests; and (2) those conflicting interests adversely affected his lawyer's performance.

*Commonwealth v. Collins*, 598 Pa. 397, 957 A.2d 237, 251 (Pa.2008) (citations and internal quotation marks omitted). Put another way, "[a]n attorney owes his client a duty of loyalty, including a duty to avoid conflicts of interest. The

attorney's duty of loyalty is the obligation of counsel to avoid actual conflicts of interest that would adversely affect his ability to perform on behalf of his client." *Commonwealth v. Tedford*, 598 Pa. 639, 960 A.2d 1, 54 (Pa.2008) (citation and internal quotation marks omitted).

Appellant's allegations concerning the disciplinary investigation of his trial counsel do not even begin to demonstrate an actual conflict of interest. Even accepting the idle speculations that comprise appellant's conflict argument, there are stressful matters in the personal lives of lawyers that might affect their ability to prepare for and manage a trial: financial difficulties, substance abuse, marital difficulties, sleep disorders, depression, even collateral attacks by other lawyers involving speculation concerning prior cases. But, appellant's claim here sounds in an "actual conflict of interest," a theory appellant prefers because he does not have to prove anything more. But, unlike cases that entail clear and direct conflicts, appellant's trial counsel was not concurrently representing an accomplice or co-defendant; counsel had not represented the victim or the victim's family before; and the disciplinary investigation did not even involve this case. This is not a case of conflict; it is a case of rank sophistry.

Moreover, any question of whether appellant's trial counsel was actually conflicted must be measured by the governing law as it existed when this matter was tried. As members of the bar, lawyers are obligated to recognize and avoid actual conflicts in the first instance, just as they are obligated not to pursue baseless or frivolous claims, as here. Appellant's current counsel is essentially claiming that trial counsel was obliged, at the time of trial, to inform the court that he had a conflict because of the pending disciplinary investigation and to seek to withdraw from representation of appellant. But nothing in the law, either at the time of appellant's trial or now, remotely suggests that counsel was bound to view his own unrelated personal disciplinary issues, which were evidently public knowledge in the Lehigh County legal community, as creating an actual conflict with his client. In short, appellant proposes a novel and unprincipled expansion of what

amounts to "actual conflict." Even if a court someday were to adopt such an odd rule, however, that new rule could not be used to retroactively condemn trial counsel's conduct decades ago.[2]

Justice McCAFFERY, concurring.

I agree with the Court that the PCRA requires that petitions for relief be filed within one year of the date a judgment of sentence becomes final, subject to three exceptions. 42 Pa.C.S. § 9545(b). In this case, the PCRA judge held that certain facts contained in internal documents maintained by the Office of Disciplinary Counsel regarding Appellant's trial counsel could **not** have been discovered through the exercise of due diligence by Appellant's prior counsel. Therefore, the

**2.** Appellant effectively seeks to extend the actual conflict principles set forth by the U.S. Supreme Court in *Cuyler*. *Cuyler*, a case from 1980, was, of course, governing law at the time of appellant's trial in 1996. But *Cuyler*, which involved multiple representation, does not govern. Instead, appellant's attack upon his trial counsel, based on counsel's disciplinary proceedings, depends upon non-controlling cases from other jurisdictions, including cases decided long after his trial.

Appellant also cites a Pennsylvania case in existence at the time of trial, *Commonwealth v. Duffy*, 483 Pa. 170, 394 A.2d 965 (Pa.1978), but forwards no argument premised upon the case. Instead, he cites the case as supplemental authority for the general propositions that the Sixth Amendment ensures criminal defendants the right to conflict-free counsel and that while conflicts usually arise "in cases in which attorneys represented more than one party, they should be equally applicable when an attorney represents a client whose interests may conflict with his own." *Duffy*, 394 A.2d at 967 & n. 5. The conflict in *Duffy* arose from evidence of counsel's own role in the crime for which the appellant was on trial. Notably, in *Duffy*, counsel himself raised the issue. Like *Cuyler*, *Duffy* does not establish that a lawyer should deem himself to have an actual conflict of interest with a particular client whenever the lawyer is facing a totally unrelated disciplinary investigation. The indisputable fact remains that neither the U.S. Supreme Court nor this Court has accepted appellant's expansion of what constitutes an "actual conflict," much less allowed it to be used as a basis to retroactively condemn trial counsel. Appellant has not shown that his trial counsel, while representing him, labored under a cognizable and actual conflict of interest. Presumed prejudice is therefore not applicable and appellant must prove his claims under the ineffectiveness standard set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Appellant has already had that opportunity in his first round of collateral review and failed; he should proceed now to federal court, where he should have been eight years ago.

judge ruled that the instant petition was timely because it was filed within 60 days of the discovery by current counsel of the contents of those documents.

The Court disposes of this matter on the basis of untimeliness. However, while the Court posits that all of the documents containing the facts upon which Appellant relies were openly available to the public long before the filing of the instant petition, the Court does not address the PCRA judge's specific finding that certain of the newly discovered facts upon which Appellant relies were contained in internal documents, and that prior counsel was not derelict in his duty of due diligence in failing to obtain these internal documents.[1] Because I find no basis upon which to disagree with the assessment of the PCRA judge, I do not join the determination of the Court that the instant petition is time barred.

The instant petition is Appellant's second petition for collateral review of his death sentence. Therefore, Appellant bears the burden of making a strong *prima facie* showing to demonstrate that a miscarriage of justice may have occurred, or that he is actually innocent. *Commonwealth v. Beasley*, 600 Pa. 458, 967 A.2d 376, 384 (Pa.2009); *Commonwealth v. Lawson*, 519 Pa. 504, 549 A.2d 107, 112 (Pa.1988). Because Appellant does not assert his innocence, he is required to demonstrate that the proceedings which resulted in his conviction were so unfair that a miscarriage of justice has occurred which no civilized society could tolerate. *Beasley, supra* at 393; *Commonwealth v. Fahy*, 558 Pa. 313, 737 A.2d 214, 223 (Pa.1999): *Commonwealth v. Carpenter*, 555 Pa. 434, 725 A.2d 154, 160 (Pa.1999); *Commonwealth v. Morales*, 549 Pa. 400, 701 A.2d 516, 520–21 (Pa.1997). Upon thorough review of the record, I conclude that Appellant has not sustained his burden. Therefore, I would affirm the order denying his second petition for collateral review on this basis.

---

1. Appellate review of a PCRA court's decision is limited to examining whether the PCRA court's findings of fact are supported by the record and whether its conclusions of law are free from legal error. *Commonwealth v. Colavita*, 606 Pa. 1, 993 A.2d 874, 886 (Pa.2010).