J-A21030-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| MYLES RAMZEE | |
| Appellant | No. 23 EDA 2015 |

Appeal from the PCRA Order November 26, 2014
In the Court of Common Pleas of Carbon County
Criminal Division at No(s): CP-13-CR-0000047-1998

BEFORE: ALLEN, J., MUNDY, J., and FITZGERALD, J.[*]

MEMORANDUM BY MUNDY, J.:                    **FILED AUGUST 12, 2015**

Appellant, Myles Ramzee, appeals from the November 26, 2014 order dismissing as untimely his sixth petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546. After careful consideration, we affirm based on the thorough and well-supported opinion of the Honorable Steven R. Serfass.

The PCRA court has fully and accurately summarized the factual and procedural history of this case in its February 12, 2015 opinion, which we adopt and need not restate here in its entirety. Briefly, Appellant was convicted of first-degree murder and related offenses and sentenced to life in prison on May 17, 1999. As held by a panel of this Court in an earlier

_____

[*] Former Justice specially assigned to the Superior Court.

appeal, "[A]ppellant's judgment of sentence became final on [] February 12, 2001, which was ninety days after our Supreme Court denied allocatur on direct appeal and the date upon which the time expired for requesting a writ of certiorari with the United States Supreme Court." *Commonwealth v. Ramzee*, 890 A.2d 1104 (Pa. Super. 2005) (unpublished memorandum at 2) (citations omitted) (*Ramzee III*). Appellant filed a *pro se* "petition for Writ of Habeas Corpus" on May 21, 2012, which the PCRA court treated as Appellant's sixth PCRA petition. The PCRA court appointed counsel to represent Appellant, and Counsel filed a "First Amended Petition for Post-Conviction Relief" on August 30, 2012. Following oral argument and briefing by the parties, the PCRA court, on November 26, 2014, denied Appellant's petition as untimely. Appellant filed a timely notice of appeal on December 18, 2014.[1]

On appeal, Appellant raises the following question for our review.

> I. Should the petition for writ of habeas corpus (pursuant to 42 Pa.C.S. Section 6502-6503) as previously filed by [Appellant] on May 21, 2012, and the first amended petition for post-conviction relief as filed on August 30, 2012, be addressed on their merits as multiple miscarriages of justice occurred in this case and recognized exceptions to the otherwise one (1) year filing deadline set out at 42 Pa.C.S.A. Section 9545(b) apply here and to not do so would result in a gross injustice?

Appellant's Brief at 6.

---

[1] Appellant and the PCRA court have complied with Pennsylvania Rule of Appellate Procedure 1925.

> Our standard of review of the denial of a PCRA petition is limited to examining whether the court's rulings are supported by the evidence of record and free of legal error.  This Court treats the findings of the PCRA court with deference if the record supports those findings. It is an appellant's burden to persuade this Court that the PCRA court erred and that relief is due.

***Commonwealth v. Feliciano***, 69 A.3d 1270, 1274-1275 (Pa. Super. 2013) (citation omitted).

Instantly, the PCRA court dismissed Appellant's sixth PCRA petition as untimely.  "[I]t is well-settled that … a question of timeliness implicates the jurisdiction of our Court."  ***Commonwealth v. Gandy***, 38 A.3d 899, 902 (Pa. Super. 2012) (internal quotation marks and citation omitted), *appeal denied*, 49 A.3d 442 (Pa. 2012).  "Because these timeliness requirements are mandatory and jurisdictional in nature, no court may properly disregard or alter them in order to reach the merits of the claims raised in a PCRA petition that is filed in an untimely manner."  ***Commonwealth v. Lopez***, 51 A.3d 195, 196 (Pa. 2012) (internal quotation marks and citation omitted).  The PCRA "confers no authority upon this Court to fashion *ad hoc* equitable exceptions to the PCRA time-bar[.]"  ***Commonwealth v. Watts***, 23 A.3d 980, 983 (Pa. 2011) (citation omitted).  This is to "accord finality to the collateral review process."  ***Id.*** (citation omitted).  "It is well settled that [a]ny and all PCRA petitions must be filed [in a timely manner] unless one of three statutory exceptions applies."  ***Commonwealth v. Garcia***, 23 A.3d 1059, 1061-1062 (Pa. Super. 2011)

(internal quotation marks and citations omitted), *appeal denied*, 38 A.3d 823 (Pa. 2012). "We have repeatedly stated it is the appellant's burden to allege and prove that one of the timeliness exceptions applies. Whether [the a]ppellant has carried his burden is a threshold inquiry prior to considering the merits of any claim." **Commonwealth v. Edmiston**, 65 A.3d 339, 346 (Pa. 2013) (citation omitted), *cert. denied*, **Edmiston v. Pennsylvania**, 134 S. Ct. 639 (2013).

The Act provides for the following possible exceptions to the timeliness requirement.

### § 9545. Jurisdiction and proceedings

…

(b) Time for filing petition.—

(1) Any petition under this subchapter, including a second or subsequent petition, shall be [timely] filed … unless the petition alleges and the petitioner proves that:

(i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;

(ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

(iii) the right asserted is a constitutional right that was recognized by the Supreme

- 4 -

Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

(2) Any petition invoking an exception provided in paragraph (1) shall be filed within 60 days of the date the claim could have been presented.

…

42 Pa.C.S.A. § 9545(b).

Appellant's sixth PCRA petition is facially untimely. His sentence, as noted above, became final on February 12, 2001. Therefore, Appellant had until February 12, 2002, one year from that date, to file a first or any subsequent PCRA petition. **See generally** 42 Pa.C.S.A. § 9545(b)(3). As noted, it is required that Appellant pleads and proves one of the statutory exceptions to the PCRA's time limits to invoke the PCRA or this Court's jurisdiction to consider his petition. **See Edmiston**, **supra**.

Appellant advances a number of arguments why his PCRA petition should be deemed timely or reviewable notwithstanding the timeliness constraints of the PCRA. Appellant's Brief at 21-48. Appellant avers the PCRA court "failed to reconcile that case[]law establishes that what might otherwise be deemed an untimely [PCRA] [p]etition can nevertheless be characterized as timely for a reason expanding upon the [s]tatutory exceptions or for a reason outside of any of those exceptions." **Id.** at 32. Appellant's arguments center on his contention that his counsel, appointed

by the PCRA court to represent him during his first timely PCRA, was ineffective and effectively abandoned him during his appeal from the PCRA court's denial of that petition. *Id.* at 24-26; *see Commonwealth v. Ramzee*, 847 A.2d 760 (Pa. Super. 2004) (unpublished memorandum).[2] In particular, Appellant claims his counsel was ineffective before the PCRA court and this Court by failing to advance various PCRA claims and by "abandoning" him by withdrawing prior to filing a timely petition for allowance of appeal with our Supreme Court. *Id.*

Appellant suggests the "abandonment" of PCRA counsel constitutes an unknown fact not ascertainable through due diligence, pursuant to Section 9545(b)(1)(ii), and consonant with *Commonwealth v. Bennett*, 930 A.2d 1264 (Pa. 2007) and *Commonwealth v. Smith*, 35 A.3d 766 (Pa. Super. 2011), *appeal denied*, 53 A.3d 757 (Pa. 2012). *Id.* at 32-33. Alternatively, Appellant argues that the decisions by this Court in *Commonwealth v. Leasa*, 759 A.2d 941 (Pa. Super. 2000), *Commonwealth v. Peterson*, 756 A.2d 687 (Pa. Super. 2000), and *Commonwealth v. Robinson*, 781 A.2d 152 (Pa. Super. 2001), *reversed*, 837 A.2d 1157 (Pa. 2003), treating claims of PCRA counsel ineffectiveness as extensions of prior timely PCRA petitions where PCRA counsel has failed to file an appellate brief, should be extended to his instant PCRA petition. *Id.* at 37-39. Finally, Appellant argues that

---

[2] Appellant's *pro se* petition for allowance of appeal was denied on December 22, 2004. Supreme Court Order, 153 MAL 2004, 12/22/04, at 1.

based on the United States Supreme Court case of *Martinez v. Ryan*, 132 S. Ct. 1309 (2012), Appellant should be afforded a merits review of his ineffectiveness claims against initial PCRA counsel notwithstanding the time constraints of the PCRA. *Id.* at 40-42.

After careful review, we conclude that the trial court's February 12, 2015 Rule 1925(a) memorandum opinion fully sets forth Appellant's claims, identifies the proper standards of review, discusses the relevant law, and explains the bases for its conclusion that Appellant has failed to plead or prove an exception to the timeliness requirements, statutory or otherwise, of the PCRA. We have carefully reviewed the entire record and Appellant's arguments, and we conclude that the thorough and well-reasoned opinion of Judge Steven R. Serfass is in concert with our own views.

Specifically, we agree that Appellant's counsel during his first PCRA did not abandon Appellant by withdrawing after this Court affirmed the PCRA court's denial of Appellant's first PCRA on the merits and that *Bennett* and *Smith* are inapposite to this case. We also agree that Appellant's reliance on the holdings in *Leasa*, *Peterson*, and this Court's decision in *Robinson* is misplaced. Our Supreme Court reversed *Robinson* and therein held "the Superior Court's decisions in [] *Leasa*[], and [] *Peterson*[] are hereby expressly disapproved." *Commonwealth v. Robinson*, 837 A.2d 1157, 1163 (Pa. 2003). Finally, we agree with the PCRA court that, in light of this Court's decision in *Commonwealth v. Saunders*, 60 A.3d 162 (Pa. Super.

2013), *appeal denied*, 72 A.3d 603 (Pa. 2013), *cert. denied*, **Saunders v. Pennsylvania**, 134 S. Ct. 944 (2014), **Martinez** is inapplicable to the timeliness of Appellant's sixth PCRA petition and the jurisdiction of the PCRA court. Furthermore, this Court addressed and rejected Appellant's contentions relative to his entitlement to effective assistance of PCRA counsel, and his alleged inability to raise those issues in a timely fashion, in our disposition of his appeal from the denial of his second PCRA. **See Ramzee III**, **supra**.

Accordingly, we adopt the February 12, 2015 opinion of the Honorable Steven R. Serfass as our own for the purposes of our disposition of this appeal. We conclude the PCRA court committed no error in determining Appellant's sixth PCRA petition is untimely. Additionally, concluding the PCRA court and this Court are without jurisdiction to address the merits of Appellant's claims, we affirm the PCRA court's November 26, 2014 order dismissing his sixth PCRA petition.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/12/2015

- 8 -

**IN THE COURT OF COMMON PLEAS OF CARBON COUNTY, PENNSYLVANIA**
**CRIMINAL DIVISION**

COMMONWEALTH OF PENNSYLVANIA :
                                            :
              vs.                           :      No. 047 CR 1998
                                            :
MYLES RAMZEE,                               :
              Defendant                     :


Gary F. Dobias, Esquire
     Assistant District Attorney      Counsel for the Commonwealth
Michael P. Gough, Esquire             Counsel for the Defendant

### MEMORANDUM OPINION

Serfass, J. - February 12, 2015

Defendant, Myles Ramzee, (hereinafter "Defendant"), has taken this appeal from the Order of Court entered on November 26, 2014 denying Defendant's "First Amended Petition for Post-Conviction Relief." We file the following Memorandum Opinion pursuant to Pennsylvania Rule of Appellate Procedure 1925(a) and recommend that the aforesaid Order of Court be affirmed for the reasons set forth hereinafter.

### FACTUAL AND PROCEDURAL HISTORY

The facts surrounding the murder of Tyrone Hill, a/k/a Korran Harrington a/k/a Carona, when viewed most favorably to the Commonwealth as verdict winner, find their genesis in turf wars between drug dealers.[1] Five individuals were charged with

---

[1] Reference to the trial transcripts is to the original first three volumes filed on April 20, 1999 and the amended remaining volumes, filed on July 26, 1999. The amendments to Volumes IV through VII were made due to a problem

[FS-3-15]

1

the Murder of Carona:

1. Defendant;
2. Kaquwan Milligan a/k/a Footy;
3. Dennis Boney a/k/a Bunny;
4. Cetewayo Frails a/k/a Cease; and
5. Verna Russman.

During 1997, the prosecution's primary witness, Verna Russman, was a crack cocaine addict, selling drugs for Defendant and Anthony Cabey a/k/a V.A. N.T., 3/11/99, pp. 136-141. The drugs were sold primarily in Monroe County, Id., and generated approximately ten thousand dollars ($10,000.00) per week, which was shared by Defendant, V.A. and the others involved in the drug trade, including Footy, Cease and Bunny. Id. at 164. For her part, Verna received a place to stay and crack cocaine to support her habit. Id. at 164-165.

In the spring of 1997, Verna began selling drugs for Terrell Owens a/k/a Lite, whom Defendant had brought into the drug operation after V.A.'s arrest and incarceration. Id. at 139-140; N.T., 3/17/99, pp. 685-687. In October of 1997, Lite planned to leave the state and brought in Carona as his replacement. N.T., 3/11/99, pp. 141-142. Defendant admitted his involvement in the drug sales, but claimed to have quit the operation prior to the murder and, thus, denied knowing or killing Carona. N.T., 3/17/99, pp. 685-693.

On Saturday October 25, 1997, the day before the murder,

---

with page numbering and in no way changed the content of these volumes.

Verna and Footy spent the day selling drugs in Monroe County, where they eventually met with Cease, Defendant and Bunny. N.T., 3/11/99, pp. 44, 147-150; N.T., 3/12/99, pp. 332-333. During the visit, Verna smoked crack cocaine and listened to Defendant, Cease, Bunny and Footy plan to rob Carona of his money and drugs in order to cut into his drug territory. Id. at 150-151.

Thereafter, Verna and Footy returned to their apartment in Palmerton, Carbon County, which they shared with several people, including Lite and Carona. Id. at 141-142. She and Carona then bagged drugs he had purchased earlier that day. Id. at 44, 152. Later, Verna took Carona's vehicle to sell more drugs, while Footy remained in Palmerton. Id. at 142, 153.

During her trip, Verna was paged to bring Cease, Defendant and Bunny to the Palmerton apartment to rob Carona as planned. Id. at 172. The group arrived in two vehicles in the early morning hours of October 26, 1997. Id. at 154-156, 177. Verna roused Carona, telling him she needed an eight ball to sell. Id. at 156. Bunny sat down to play a video game while Cease stood guard by the door. Id. at 157-158. Defendant greeted Carona and then exited the room for a few seconds. Id. at 157. Upon returning, Defendant walked up behind Carona, who was leaning down to retrieve his clothes, and shot him in the back of the head. Id. As Carona started to fall, Cease pushed him backward, causing him to fall face up on the floor. Id. Cease and

[FS-3-15]
3

Defendant then rifled through Carona's pockets and stole his drugs. Id. at 159.

In the meantime, Footy dragged an upset Verna from the room, while all four men appeared calm. Id. When allowed to return, Verna saw Carona's body covered with blankets on the floor. Id. at 160. Defendant then ordered Verna to drive Carona's car, while Cease, Footy and Bunny followed in another vehicle. Id. at 160-161. They eventually left Verna at an apartment in Monroe County. Id. at 162; N.T., 3/12/99, pp. 336-339.

The crime scene was discovered by the landlord on the morning of the murder and was consistent with Verna's description. Id. at 100-106. A subsequent police investigation and autopsy revealed that Carona died of a gunshot wound to the back of his head, consistent with the victim being in a bent over position. Id. at 52, 82-86. Carona's vehicle was eventually found in Brooklyn, New York, containing microscopic hairs similar to those of Bunny. N.T., 3/12/99, pp. 393-397; N.T., 3/16/99, pp. 564-571.

The day following the murder, Verna contacted the police to tell them about the killing. She was subsequently arrested. N.T., 3/11/99, p. 164. At the time of trial, Verna had been in jail for approximately fifteen (15) months, charged with the same crimes as her co-defendants. Id. at 134, 163. No promises

[FS-3-15]

had been made in exchange for her testimony. Id. at 163. She testified because she believed the killing should not have occurred and the truth needed to be told. Id.

On November 19, 1997, the police arrived at Defendant's Brooklyn residence to execute a warrant for his arrest. N.T., 3/17/99, pp. 643-645. After repeatedly knocking on the apartment door and hearing movement inside, an officer announced that he was a police officer with a warrant. Id. at 646-647. Defendant eventually opened the door, but when asked his identity, he gave the name of McCormick and a false date of birth. Id. at 649-650. Defendant was then arrested, as the officer was able to surmise that the individual was actually Defendant based upon the address, a matching description and Defendant's inability to spell the alias. Id. at 650-651. On December 2, 1997, Defendant was transported to Pennsylvania to face the charges of First Degree Murder, Robbery, Aggravated Assault and Criminal Conspiracy.

Defendant asserted an alibi defense, indicating that he had spent the entire weekend of October 25 and 26, 1997 with friends and family in Brooklyn, New York. N.T., 3/17/99, pp. 664-670, 676; N.T., 3/18/99, pp. 715-716, 725-727, 730-733, 738-744. He further claimed he had not been in Pennsylvania during the entire month of October 1997. N.T., 3/17/99, pp. 684-685.

The prosecution presented Verna's testimony placing

[FS-3-15]

Defendant at the scene of the crime. Additionally, five other witnesses placed him in Pennsylvania, in an adjacent county, on the day the conspiracy developed and/or the day of the murder, including: Rebecca Hoffman, N.T., 3/16/99, pp. 331-339; Anthony Bennett, Id. at 349-348; Stella Russman, Id. at 375-378; Lykette Bennett, N.T., 3/16/99, 490-495; and Defendant's friend, Kadias Murdaugh a/k/a Soup. Id. at 498-507.

On March 19, 1999, following a six-day jury trial, Defendant was found guilty of First Degree Murder, Robbery, Aggravated Assault and Criminal Conspiracy. On May 17, 1999, Defendant was sentenced to life imprisonment on the First Degree Murder charge and to one-hundred-fifty (150) months minimum and three-hundred (300) months maximum, consecutive to the life sentence, on the Robbery and Criminal Conspiracy charges. The Aggravated Assault charge merged with the Murder charge for purposes of sentencing. Defendant's direct appeal of his conviction to the Superior Court of Pennsylvania was denied as was his Petition for Allowance of Appeal filed with the Supreme Court of Pennsylvania.

On June 18, 2001, Defendant filed his first Post Conviction Relief Act (PCRA) Petition, which was amended on June 5, 2002. On April 14, 2003, the Honorable Richard W. Webb issued an Order and Opinion denying and dismissing Defendant's PCRA Petition. The Pennsylvania Superior Court affirmed the denial of

[FS-3-15]

Defendant's petition on January 12, 2004 and, on December 22, 2004, the Supreme Court of Pennsylvania denied Defendant's Petition for Allowance of Appeal concerning his first PCRA Petition.

On February 7, 2005, Defendant filed a second PCRA Petition, *pro se*. On February 14, 2005, Judge Webb dismissed and denied Defendant's second petition. Defendant subsequently filed a timely appeal of Judge Webb's dismissal and denial to the Superior Court of Pennsylvania. On November 14, 2005, the Superior Court affirmed the denial of Defendant's second PCRA Petition. Defendant then filed a Writ of Habeas Corpus in the United States District Court for the Middle District of Pennsylvania on May 20, 2005. Defendant's Writ of Habeas Corpus was denied on December 20, 2006, as was a Certificate of Appealability. Defendant then filed an appeal with the United States Court of Appeals for the Third Circuit, which was denied on July 20, 2007.

On August 3, 2010, Defendant filed his third PCRA Petition, which was denied by Judge Webb on April 12, 2011. On December 5, 2011, the Superior Court of Pennsylvania affirmed Judge Webb's denial of Defendant's third PCRA Petition. On May 30, 2012, the Supreme Court of Pennsylvania denied Defendant's Petition for Allowance of Appeal Nunc Pro Tunc.

On March 19, 2012, while Defendant's Petition for Allowance

[FS-3-15]

7

of Appeal Nunc Pro Tunc was pending, Defendant filed a "Notice of Appeal." On March 29, 2012, we entered an Order treating the Notice of Appeal as Defendant's fourth PCRA Petition. On April 11, 2012, we dismissed the same as premature because of Defendant's pending matter before the Supreme Court of Pennsylvania. On April 12, 2012, Defendant filed his fifth PCRA Petition. On April 19, 2012, we issued a Notice of Intent to Dismiss Defendant's PCRA Petition. Pursuant to that notice, we dismissed Defendant's fifth PCRA Petition on May 31, 2012.

On May 21, 2012, Defendant filed what he titled "A Petition for Writ of Habeas Corpus." On June 12, 2012, we issued an Order treating Defendant's Habeas Corpus Petition as a PCRA Petition and appointed Michael P. Gough, Esquire as Defendant's counsel. Attorney Gough was directed to either file a letter indicating that the PCRA Petition was non-meritorious or to file an amended petition raising all meritorious claims.

On August 30, 2012, Defendant, through Attorney Gough, filed a "First Amended Petition for Post-Conviction Relief." On November 20, 2012, the Commonwealth filed its Answer to Defendant's petition, titled "Commonwealth's Answer to Defendant's Amended Sixth Petition for Post-Conviction Collateral Relief." On July 17, 2014, Defendant filed a Praecipe for Argument with respect to his "First Amended Petition for Post-Conviction Relief." On July 22, 2014, we issued an Order

[FS-3-15]

8

scheduling oral argument for September 19, 2014.

After consideration of Defendant's "First Amended Petition for Post-Conviction Relief," the Commonwealth's Answer thereto, review of the parties' briefs, and following oral argument thereon, we issued our Order of Court dated November 26, 2014 denying Defendant's petition.

## DISCUSSION

On December 18, 2014, Defendant filed his Notice of Appeal. Via Order dated December 18, 2014, we directed Defendant to file a concise statement of matters complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b). In compliance with our Order, Defendant filed his concise statement on December 31, 2014.

In his concise statement, Defendant raises the following issues on appeal:

1. That we erred in dismissing the most recent Post-Conviction Relief Act filing by Defendant, and the Amended Petition filed on behalf of the Defendant by his current counsel, as untimely;

2. That we erred in failing to recognize or to properly construe the argument advanced by Defendant as to his being abandoned by former counsel Robert M. Buttner, Esquire who failed to raise in the Superior Court of Pennsylvania, issues Defendant then wished raised and who also failed to withdraw from the case when Defendant asked that he do so, and thus such abandonment constitutes a newly-discovered fact as referenced in 42 Pa. C.S.A. § 9545(b)(1)(ii);

3. That the Supreme Court of Pennsylvania has not expressly overruled the decisions in Commonwealth v.

[FS-3-15]

9

Leasa, 759 A.2d 941 (Pa. Super. 2000), Commonwealth v. Peterson, 756 A.2d 687 (Pa. Super. 2000), and Commonwealth v. Robinson, 781 A.2d 152 (Pa. Super. 2001), respectively, and thus those cases still afford support for the proposition that the claims advanced by Defendant in his most recent filings are merely an extension of those advanced in his initial and earlier Post-Conviction Relief Act Petitions and thus we have jurisdiction to address same.

4. The United States Supreme Court decision in Martinez v. Ryan, 123 S. Ct. 1309 (2012) applies to this case sub judice as per 42 Pa. C.S.A. Section 9545(b)(1)(iii) and was expanded by the recent decision of the United States Court of Appeals, Third Circuit in Cox v. Horn, Number 13-2982 (Decided August 7, 2014); and

5. That we erred in our conclusion that Defendant was required to file his Post-Conviction Relief Act Petition on or before February 12, 2002.

## I.   Dismissal of Defendant's Most Recent Petition as Untimely

We will address the first and fifth issues raised in Defendant's concise statement together, as the underlying determination to be derived relative to both issues is the date representing the deadline for Defendant to have filed a timely PCRA petition.

Pursuant to 42 Pa.C.S.A. § 9543(a), in order to make out a claim under the PCRA, a petitioner must plead and prove by a preponderance of the evidence that he has been convicted of a criminal offense under the laws of this Commonwealth and is currently serving a term of imprisonment, probation or parole for that crime, awaiting execution of a sentence of death for the crime, or serving another sentence which must expire before

[FS-3-15]
10

the disputed sentence begins, and that the conviction resulted from one or more of the following:

      (i)   A violation of the Constitution of this Commonwealth or the Constitution or laws of the United States which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place;

      (ii) Ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place;

      (iii)A plea of guilty unlawfully induced where the circumstances make it likely that the inducement caused the petitioner to plead guilty and the petitioner is innocent;

      (iv) The improper obstruction by government officials of the petitioner's right of appeal where a meritorious appealable issue existed and was properly preserved in the trial court.

PCRA claims must be filed within one year of the date the judgment becomes final. 42 Pa. C.S.A. § 9545(b)(1). A judgment becomes final for purposes of the PCRA when either the direct review is completed or the time for direct review has passed. 42 Pa. C.S.A. § 9545(b)(3). In order to file a petition under the PCRA beyond that one-year limitation, 42 Pa. C.S.A. § 9545(b)(1) sets forth the following three (3) exceptions:

      (i)   the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;

(ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

(iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

Any petition invoking an exception pursuant to the aforementioned sub-section must be filed within sixty (60) days of the date the claim could have been presented. 42 Pa. C.S.A. §9545(b)(2). When the merits of an issue have been ruled upon by the highest appellate court in which the petitioner could have had review as a matter of right, or where the petitioner could have raised the issue in a prior proceeding, the issue is considered waived. 42 Pa. C.S.A. § 9544.

The time limitations of the PCRA are jurisdictional in nature; as such, when a PCRA petition is not filed within one year of the expiration of direct review, or not eligible for one of the three limited exceptions, or entitled to one of the exceptions, but not filed within 60 days of the date that the claim could have been first brought, the trial court has no power to address the substantive merits of a petitioner's PCRA claims. Commonwealth v. Gamboa-Taylor, 753 A.2d 780, 783 (Pa. 2000).

Defendant was convicted on March 19, 1999 and sentenced on May 17, 1999. The Superior Court of Pennsylvania denied

[FS-3-15]

12

Defendant's direct appeal and affirmed the judgment of sentence. Defendant thereafter filed a Petition for Allowance of Appeal, which was denied by the Supreme Court of Pennsylvania on November 14, 2000. Defendant's judgment then became final ninety (90) days subsequent to the Supreme Court's denial of his Petition for Allowance of Appeal. Defendant's ability to request PCRA relief under his allotted one-year limitation expired on February 12, 2002. Defendant's current PCRA Petition was filed on May 21, 2012, more than ten (10) years beyond the expiration of his filing deadline. Accordingly, in order for this Court to have had jurisdiction over Defendant's current PCRA Petition, one of the exceptions set forth in 42 Pa. C.S.A. § 9545(b)(1) would have had to apply. However, Defendant failed - as more thoroughly discussed below - to demonstrate the applicability of any of the PCRA's three (3) statutory exceptions to the timeliness requirement set forth in 42 Pa. C.S.A. § 9545(b)(1), which would allow him to extend the one-year time limitation. Therefore, the deadline for Defendant to file a timely PCRA petition was properly calculated. Accordingly, because we lacked jurisdiction to consider the merits of Defendant's "First Amended Petition for Post-Conviction Relief," said petition was properly denied.

## II.  Abandonment by Former Counsel

In an attempt to strengthen a meritless argument, Defendant attempts to divide his claim of abandonment by former counsel into two separate issues in his concise statement. Because Defendant's issues two and four both pertain to an alleged abandonment by counsel, we will address those issues herein.

### A.  Issue Number Two

In issue number two of his concise statement, Defendant alleges that because his former counsel, Robert M. Buttner, Esquire, "failed to raise … issues the Defendant then wished raised and … failed to withdraw from the case when the Defendant asked that he do so…" such alleged actions and/or inactions constitute newly-discovered facts as referenced in 42 Pa. C.S.A. § 9545(b)(1)(ii).

As explained in Section I hereinabove, in order to qualify for the newly-discovered evidence exception to the one-year time limitation set forth at 42 Pa. C.S.A. § 9545(b)(1), a claim must be brought "within sixty (60) days of the date the claim could have been presented." 42 Pa. C.S.A. § 9545(b)(2). Exception (b)(1)(ii) requires a petitioner to allege and prove that there were facts upon which his claim is predicated that were unknown to him and that he could not have ascertained those facts by the exercise of due diligence. 42 Pa. C.S.A. § 9545(b)(1)(ii); Commonwealth v. Lambert, 57 A.3d 645, 648 (Pa. Super. 2012).

[FS-3-15]
14

However, prior PCRA counsel's performance does not constitute a newly-discovered fact which would entitle Defendant to the benefit of the exception set forth at section 9545(b)(1)(ii). Commonwealth v. Gamboa-Taylor, 753 A.2d 780, 785 (Pa. 2000).

Defendant, in his "Memorandum of Law in Support of First Amended Petition for Post-Conviction Relief," argued that Attorney Buttner abandoned him during the appeal process and that such abandonment constituted a newly-discovered fact. In support of this argument, Defendant attempted to rely on Commonwealth v. Smith, 35 A.3d 766 (Pa. Super. 2011). The Superior Court in Smith, relying on Commonwealth v. Bennett, 930 A.2d 1264 (Pa. 2007), held that, because the defendant's initial appeal was dismissed as a result of counsel failing to file a brief, such action by counsel was an abandonment of the defendant. In the instant matter, Attorney Buttner did not abandon Defendant. Rather, after the Superior Court had issued its Memorandum and Judgment affirming Judge Webb's Order, Attorney Buttner filed a petition to withdraw as counsel. Defendant's appeal was decided on the merits. It was not dismissed as a result of a procedural default and, therefore, is not analogous to the situation in Smith.

After distinguishing between Smith and the instant matter in the footnote of our November 26, 2014 Order, Defendant, in his concise statement, now asserts that we failed to recognize

[FS-3-15]

or to properly construe his abandonment of counsel argument – that Attorney Buttner failed to raise specifically requested issues and did not withdraw as counsel upon Defendant's request. However, Defendant's abandonment claim still fails. Attorney Buttner did not abandon Defendant by, allegedly, not raising every issue that Defendant had requested. See Commonwealth v. Grosella, 902 A.2d 1290, 1294 (Pa. Super. 2006) (holding that the defendant was not abandoned by his counsel when his counsel failed to raise all issues requested to be raised by the defendant on direct appeal). Furthermore, we are unable to find the logic in Defendant's argument that Attorney Buttner's alleged failure to withdraw as counsel upon Defendant's request amounts to abandonment. Accordingly, Defendant cannot demonstrate that any alleged insufficiency of representation, or abandonment, by Attorney Buttner constitutes a newly-discovered fact under 42 Pa. C.S.A. § 9545(b)(1)(ii).

## B.  Issue Number Four

Defendant argues in issue number four of his concise statement that Martinez v. Ryan, *supra*, affords him a mechanism by which he can now bring a PCRA petition to challenge the effectiveness of counsel. Martinez held that where state law requires an ineffective assistance of counsel claim to be raised in an initial review collateral proceeding, a procedural default will not bar a federal habeas court from hearing the ineffective

[FS-3-15]
16

assistance of counsel claim. Martinez v. Ryan, 123 S. Ct. 1309, 1316 (2012). Defendant further argues that Martinez has been expanded by the Third Circuit Court of Appeals in Cox v. Horn, 757 F.3d 113 (3d Cir. 2014).

Martinez is inapposite to Defendant's case in light of the recent Pennsylvania Superior Court decision of Commonwealth v. Saunders, 60 A.3d 162 (Pa. Super. 2013). In that case, Saunders filed a second *pro se* PCRA petition alleging that his direct appeal counsel was ineffective for failing to raise the ineffectiveness of his trial counsel, and that his first PCRA counsel was ineffective for failing to raise his direct appeal counsel's ineffectiveness. Saunders argued that Martinez supported his claim that a petitioner is permitted to file a second PCRA petition within sixty days of discovering the ineffectiveness of his PCRA counsel. The Superior Court disagreed with Saunders' interpretation of Martinez and held that "[w]hile *Martinez* represents a significant development in federal habeas corpus law, it is of no moment with respect to the way Pennsylvania courts apply the plain language of the time bar set forth in section 9545(b)(1) of the PCRA." Saunders at 165. Furthermore, although Defendant claims that the Cox case has expanded Martinez, Cox still specifically pertains to federal habeas corpus law. Ninety-two (92) days after the United States Supreme Court issued its ruling in Martinez, the

[FS-3-15]

17

defendant in Cox filed a motion pursuant to Fed.R.Civ.P. 60(b)(6) whereby he sought to reopen his federal habeas proceeding based on the significant change created by the Martinez decision relative to federal habeas corpus law. In vacating the District Court's order, which denied the defendant's Fed.R.Civ.P. 60(b)(6) motion, and remanding the case for further proceedings, the Third Circuit Court of Appeals merely discussed certain factors to be considered by the District Court when it reexamined the defendant's Fed.R.Civ.P. 60(b)(6) motion. As in Martinez, the opinion in Cox contains no discussion relative to this Commonwealth's Post Conviction Relief Act. Therefore, we apply the reasoning in Saunders with respect to the Superior Court's analysis of Martinez in reaching our conclusion that Cox has no impact on the plain language of 42 Pa. C.S.A. § 9545(b)(1).

## III. Extension of Defendant's Previously-Advanced PCRA Claims

Defendant argues in issue number three of his concise statement that the claims advanced in the most recent PCRA filing are merely an extension of those advanced in his initial and earlier PCRA petitions, thereby conferring upon this Court jurisdiction to hear those arguments. Defendant cites the cases of Commonwealth v. Leasa, 759 A.2d 941 (Pa. Super. 2000), Commonwealth v. Peterson, 756 A.2d 687 (Pa. Super. 2000), and Commonwealth v. Robinson, 781 A.2d 152 (Pa. Super. 2001) in

[FS-3-15]
18

support of his extension argument. In all three of those cases, the Superior Court held that the defendants' second, and third in the case of Robinson, untimely filed PCRA petitions were merely extensions of their first timely filed PCRA petitions because the first petitions were dismissed "without prejudice to [their] rights under the Post Conviction Relief Act" as a result of each defendants' counsel failing to file a brief. Leasa, 759 A.2d at 942; Peterson, 756 A.2d at 689; Robinson, 781 A.2d at 158-159.

Defendant asserts that because the Supreme Court of Pennsylvania has not expressly overruled the decisions in Leasa, Peterson and Robinson, those cases control and we have jurisdiction to address his most recent PCRA petition. We disagree. Although the Supreme Court of Pennsylvania has not expressly overruled the three cases upon which Defendant relies to bolster his position, it has expressly disapproved of all three cases. See Commonwealth v. Robinson, 837 A.2d 1157 (Pa. 2003). Accordingly, Defendant's reliance on these cases in support of his extension argument is clearly misplaced.[2]

---

[2] Despite the fact that we are not in a position to consider the cases of Commonwealth v. Leasa, 759 A.2d 941 (Pa. Super. 2000), Commonwealth v. Peterson, 756 A.2d 687 (Pa. Super. 2000), and Commonwealth v. Robinson, 781 A.2d 152 (Pa. Super. 2001) as a result of the Supreme Court's ruling in Commonwealth v. Robinson, 837 A.2d 1157 (Pa. 2003), we note that all three cases are inapposite to the case at bar. Unlike those three cases, Defendant in the instant matter was not abandoned by counsel during his first PCRA petition, or at any time thereafter. Therefore, even if those cases were still good law, they would not be controlling in the instant matter.

[FS-3-15]

19

The Superior Court's Leasa/Peterson/Robinson exception to the PCRA time-bar held that, to the extent the defendant's serial PCRA petition either renewed issues that were raised and rejected in his initial PCRA petition or sought reinstatement of the initial PCRA appeal, it would be considered a mere "extension" of the first petition which would not be subject to the PCRA's time restriction. Id. at 1160. In vacating the judgment of the Superior Court and dismissing the underlying serial PCRA as time-barred, the Supreme Court noted that the "extension" theory is not one of the three exceptions to the time-bar recognized in the PCRA itself and that the theory should not be permitted to operate as an extra PCRA conduit by which the jurisdictional time-bar may be nullified. Moreover, the Supreme Court "has repeatedly stated that the PCRA timeliness requirements are jurisdictional in nature and, accordingly, a PCRA court cannot hear untimely PCRA petitions." Commonwealth v. Rienzi, 827 A.2d 369, 371 (Pa. 2003). See also Commonwealth v. Hall, 771 A.2d 1232, 1234 (Pa. 2001) ("Pennsylvania courts lack jurisdiction to entertain untimely PCRA petitions").

"Once a PCRA petition has been decided and the ruling on it has become final, there is nothing for a subsequent petition or pleading to 'extend.' Far from continuing into perpetuity, the trial court's jurisdiction over a matter generally ends once an

[FS-3-15]
20

appeal is taken from a final order or, if no appeal is taken, thirty days elapse after the final order." Commonwealth v. Robinson, 837 A.2d at 1162. Here, Defendant's initial PCRA petition was decided when Judge Webb entered his final order of denial/dismissal on April 14, 2003. Defendant appealed that order, but his appeal was rejected on the merits by the Superior Court via memorandum opinion and order dated January 12, 2004. The Supreme Court then denied Defendant's motion for allowance of appeal on December 22, 2004. Therefore, Defendant's subsequent petitions represent entirely new collateral actions and, as such, they are subject to the time and serial petition restrictions of § 9545(b) of the PCRA.

## CONCLUSION

For the foregoing reasons, we respectfully recommend that Defendant's appeal be denied and that our Order of Court entered on November 26, 2014 denying Defendant's "First Amended Petition for Post-Conviction Relief" be affirmed accordingly.

BY THE COURT:

Steven R. Serfass, J.

FEB 1 3 2015          [FS-3-15]
                         21