**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 8 EAP 2019 |
| | : | |
| Appellee | : | Appeal from the Judgment of Superior |
| | : | Court entered on 10/29/2018 at No. |
| | : | 250 EDA 2018 reversing the Order |
| v. | : | entered on 12/14/2017 and remanding |
| | : | to the Court of Common Pleas, |
| | : | Philadelphia County, Criminal Division |
| ELWOOD SMALL, | : | at No. CP-51-CR-0521601-1982. |
| | : | |
| Appellant | : | SUBMITTED: November 18, 2019 |

**OPINION**

**JUSTICE WECHT**                                    **DECIDED: October 1, 2020**

In this appeal, we consider the continued viability of what our jurisprudence has dubbed the "public record presumption," which precludes a petitioner from establishing the existence of new facts that would support collateral review of an underlying conviction. *See Commonwealth v. Burton*, 158 A.3d 618 (Pa. 2017). Ordinarily, a petitioner seeking relief under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-46, must file the petition within one year of the date upon which his or her judgment of sentence becomes final. The PCRA sets forth three exceptions to this one-year limitation. Among these is the "newly discovered fact" exception, which renders a petition timely when the petitioner establishes that "the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence." 42 Pa.C.S. § 9545(b)(1)(ii). Interpreting this provision, this Court has held that the newly discovered fact exception is limited by a presumption relating to matters of public record,

pursuant to which a court may find that information available to the public is not a fact that is "unknown" to the petitioner. *See, e.g.*, *Commonwealth v. Chester*, 895 A.2d 520, 523 (Pa. 2006); *Commonwealth v. Lark*, 746 A.2d 585, 588 n.4 (Pa. 2000). In *Burton*, however, we reasoned that, due to unrepresented inmates' diminished access to such records, the public record presumption "does not apply to *pro se* prisoner petitioners." *Burton*, 158 A.3d at 620.

In this case, the Superior Court reversed the PCRA court's order granting relief to Appellant Elwood Small, reasoning, *inter alia*, that our holding in *Burton* did not apply to Small because he was represented by counsel some years earlier, in separate post-conviction proceedings, and thus could not be considered *pro se* for purposes of *Burton*. Although we ultimately conclude that Small is not entitled to relief, we nonetheless are persuaded by Small's frontal challenge to the public record presumption.

**I.**

The Commonwealth alleged that Small and his co-defendant, Larry Bell, committed an armed robbery of a marijuana dealer, Patrick Blake, in Blake's apartment on December 23, 1981. In the ensuing struggle, Small stabbed both Blake, who survived, and John McCrary, who died. Small and Bell were tried jointly in April 1983. At their trial, Blake identified Bell and Small as the assailants, the former having wielded a shotgun and the latter a knife. Blake testified that Small stabbed him during the robbery. Blake struggled with Small and was stabbed again, but then escaped through a kitchen window. As Blake fled, he saw Bell and McCrary struggling for control of the shotgun in the living room. Investigators later recovered a lock pin and spring assembly from a pump-action shotgun on the living room floor. Although Blake immediately recognized Bell from prior drug transactions, it was not until Blake viewed a lineup ten months later that he identified

Small as the knife-wielding assailant. At the lineup, Blake noted that Small had facial scars that Blake did not notice at the time of the robbery.

Bell testified in his own defense and provided a different account of the events, which the PCRA court found significant to the instant petition. Bell admitted that he and Small intended to rob Blake and McCrary. However, Bell denied any intention to assault or murder the victims, and denied possessing a shotgun during the altercation. Bell explained that, after he and Small entered the apartment, Small drew a knife, and Bell ordered Blake and McCrary to lie on the floor. PCRA Court Opinion, 12/14/2017 ("PCRA Ct. Op."), at 7 (citing Notes of Testimony ("N.T."), Trial, 4/11/1983, at 653, 664). Bell explained that, as he attempted to bind Blake's hands with a telephone cord, Blake jumped up and struck Small, who fell to the ground. *Id.* (citing N.T., Trial, at 653-54). McCrary then arose and began punching Bell, at which point Small came to Bell's aid and hit McCrary three times with what "sounded like punches." *Id.* (citing N.T., Trial, at 654). Bell testified that Small similarly "punched" Blake, who cried out that he had been stabbed. *Id.* at 7-8 (citing N.T., Trial, at 656). Bell claimed that he was in a panic when he left the apartment, and Small noticed that Bell had left a hat behind at the scene. The two reentered Blake's apartment by breaking a window of the apartment's side door, whereupon Bell retrieved his hat, and Small carried off a television set. On cross-examination, Bell stated that he was not promised anything in exchange for his testimony, and that he testified solely "to get this off [his] mind." *Id.* at 9 (quoting N.T., Trial, at 722).

Small also testified in his own defense and denied any participation in the crimes. Although Small was confronted with an incriminating statement that he purportedly had given to detectives, in which he had admitted to serving as a "lookout" outside Blake's apartment, he denied having made the statement. Small claimed that the detectives approached him in an interrogation room with the statement already prepared, and

instructed him to sign it. He refused and instead wrote "refuse to sign" at the bottom of each page. With regard to the facial scarring that Blake noticed at the lineup, but did not remember from the incident, Small testified that the scar on his face had been present since 1979. In response to Bell's testimony implicating Small in the crimes, Small asserted that Bell earlier had admitted that he would not reveal the true identity of the culprit, because he feared that his family would not be safe if he told the truth.

On April 13, 1983, the jury found both Small and Bell guilty of second-degree murder, robbery, aggravated assault, and criminal conspiracy. On November 9, 1983, the trial court sentenced Small to life imprisonment for second-degree murder, a consecutive term of five to ten years' imprisonment for conspiracy, and a concurrent term of five to ten years' imprisonment for aggravated assault. The Superior Court affirmed Small's judgment of sentence. *Commonwealth v. Small*, 494 A.2d 485 (Pa. Super. 1985).

Over the course of the following decades, Small made several attempts to obtain relief under the PCRA, all of which were unsuccessful. He filed his first PCRA petition on February 5, 1990, which was dismissed on June 10, 1992. The Superior Court affirmed the dismissal, and this Court denied review. *Commonwealth v. Small*, 636 A.2d 1216 (Pa. Super. 1993), *appeal denied*, 642 A.2d 485 (Pa. 1994). He filed a second PCRA petition on December 31, 1996, which was dismissed as untimely, and the dismissal likewise was upheld on appeal. *Commonwealth v. Small*, 726 A.2d 415 (Pa. Super. 1998), *appeal denied*, 737 A.2d 1224 (Pa. 1999). His third PCRA petition, filed on November 16, 2007, and amended on March 12, 2010, similarly was dismissed as untimely, and the dismissal again was upheld on appeal. *Commonwealth v. Small*, 60 A.3d 556 (Pa. Super. 2012), *appeal denied*, 62 A.3d 379 (Pa. 2013).

The instant appeal arises from Small's fourth PCRA petition, which he filed *pro se*, depositing it in the prison mail on July 22, 2014. In this petition, Small sought a new trial

based, in part, upon his discovery that Bell had testified during his own post-conviction proceedings in a manner that purportedly differed from Bell's trial testimony. Small averred that he learned this on June 14, 2013, while conducting legal research in the prison library. Due to what the PCRA court characterized as "some administrative and inexplicable error," Small's petition was neither assigned to nor received by the PCRA court until nearly three years later, on April 13, 2017. PCRA Ct. Op. at 16. On May 4, 2017, the PCRA court issued a notice of its intent to dismiss Small's petition without conducting an evidentiary hearing, pursuant to Pa.R.Crim.P. 907(1). Small responded to the notice, contending that his averments satisfied the newly discovered fact exception to the PCRA's time bar, particularly in light of this Court's decision in *Burton*.

The PCRA court reconsidered its intent to dismiss Small's petition, and "realized" that "Small did not actually have access to what he believed to be new evidence." PCRA Ct. Op. at 17. Small had based his claim solely upon a factual summary provided in a 1998 Superior Court decision affirming the denial of post-conviction relief to Bell, in which the court stated that "Bell maintained that [Small] killed the victim for personal reasons; he asserted that co-defendant Small's wife had had an adulterous affair with the victim, John McCrary." *Commonwealth v. Bell*, 706 A.2d 855, 857 (Pa. Super. 1998). The PCRA court found this summary to be insufficient to determine whether Small would be able to develop a meritorious claim. Accordingly, the court arranged for *pro bono* counsel to represent Small, and counsel was able to obtain the transcripts from evidentiary hearings conducted in 1993 in connection with Bell's PCRA proceedings. Thereafter, Small filed a counseled, amended petition on October 30, 2017, asserting that he was entitled to a new trial in light of the after-discovered evidence[1] revealed in those transcripts, and

---

[1] Distinct from the PCRA's timeliness exception for newly discovered facts, "after-discovered evidence" is a substantive basis for relief under the PCRA, applicable where the petitioner pleads and proves by a preponderance of the evidence that his conviction

further challenging the trial court's jury instruction regarding second-degree murder. The PCRA court then held an evidentiary hearing on December 5, 2017.

The PCRA court assigned significant weight to the evidence revealed in the 1993 transcripts. When Bell was asked to explain how the murder of McCrary unfolded, he testified: "We entered the apartment and [Small] flipped out and started stabbing the guys." PCRA Ct. Op. at 11 (quoting N.T., Bell PCRA Hearing, 3/5/1993, at 12). The PCRA court concluded that this description differed substantially from Bell's trial testimony, inasmuch as it omitted Bell's earlier explanation of the events that occurred before the stabbing, such as Bell's effort to tie up Blake, the fight that erupted between the four men, and Bell's initial impression that Small was "punching" rather than stabbing the victims. *Id.* at 11, 27. The court noted that Bell introduced the testimony of a prison associate, Robert Smithson, who claimed that Small had a personal motive to kill McCrary—the allegation that initially inspired Small's filing of his *pro se* petition. *Id.* at 11. Finally, the PCRA court emphasized that Bell had provided a new motivation for his decision to testify in his own defense at trial. Where he previously cited his conscience as the reason for his testimony, Bell later asserted that he testified on the advice of his counsel, who had told Bell that his testimony would serve as an admission to robbery, but

---

resulted from "[t]he unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced." 42 Pa.C.S. § 9543(a)(2)(vi); *see Commonwealth v. Bennett*, 930 A.2d 1264, 1270-72 (Pa. 2007) (discussing the distinctions between the time bar exception and the substantive basis for relief); *see also Burton*, 158 A.3d at 627-29 (same).

In order to obtain relief based upon exculpatory, after-discovered evidence, the petitioner must establish that: "(1) the evidence has been discovered after trial and it could not have been obtained at or prior to trial through reasonable diligence; (2) the evidence is not cumulative; (3) it is not being used solely to impeach credibility; and (4) it would likely compel a different verdict." *Commonwealth v. D'Amato*, 856 A.2d 806, 823 (Pa. 2004).

might provide a defense to the murder charge. *Id.* at 11-13, 27. In light of the purported disparities between Bell's trial testimony and his testimony during his post-conviction proceedings, the PCRA court concluded that the latter comprised newly discovered facts, upon which Small could premise a substantive claim for relief based upon after-discovered evidence.

The PCRA court acknowledged that, at the time, any PCRA petition invoking a timeliness exception must have been filed within sixty days[2] of the date upon which the claim first could have been presented, and that Small discovered the Superior Court's 1998 opinion in Bell's appeal on June 14, 2013, but did not file his *pro se* petition until over thirteen months later on July 22, 2014. Nonetheless, the court concluded that Small had satisfied the sixty-day requirement because the sixty-day clock did not begin to tick until Small received Bell's 1993 transcripts from his counsel, which occurred on or about September 3, 2017. Because Small filed his amended petition on October 30, 2017, the PCRA court opined that Small had asserted the applicability of the newly discovered fact exception within sixty days of the date that his claim initially could have been presented. *Id.* at 25, 33.

The parties had stipulated that the 1993 transcripts were public records, and that any member of the public could view them at the location where they were stored. The PCRA court deemed the public availability of the transcripts to be a "cruel irony" considering Small's repeated, failed efforts to obtain them from prison. *Id.* at 33. Following his discovery of the 1998 Superior Court opinion, Small had attempted to obtain relief in federal court, had asked his daughter-in-law to locate the transcripts, had attempted to subpoena the Commonwealth, and had filed a motion with the court of

---

[2] The PCRA since has been amended to extend the sixty-day limitation to a period of one year. *See* 42 Pa.C.S. § 9545(b)(2); Act of Oct. 24, 2018, P.L. 894, No. 146, § 2 (effective Dec. 24, 2018).

common pleas seeking the transcripts. *Id.* at 21-25. Despite what the PCRA court considered to be exceptional diligence, Small labored in vain. Only once Small received the assistance of counsel was he able to obtain the transcripts that contained the testimony that ostensibly supported his claim of after-discovered evidence. *Id.* at 25, 31. Thus finding the requisite due diligence, and in conjunction with its conclusion regarding the PCRA's sixty-day window, the PCRA court found that Small had established the applicability of the newly discovered fact exception, rendering his petition timely and vesting the court with jurisdiction to consider his substantive claims for relief.

The PCRA court ultimately concluded that Bell's 1993 testimony was exculpatory, unavailable at trial, non-cumulative, would not be used solely for impeachment, and likely would change the outcome of the trial, thus satisfying the requirements of a claim of after-discovered evidence. *See supra* n.1. It further asserted that Small's challenge to the trial court's jury instruction was rendered cognizable by the newly discovered facts and separately warranted relief.[3] Accordingly, the PCRA court vacated Small's judgment of sentence and awarded him a new trial.

On the Commonwealth's appeal, the Superior Court reversed the order of the PCRA court, concluding that Small failed to establish the applicability of an exception to the PCRA's time bar, which denied the PCRA court jurisdiction to award him relief. *Commonwealth v. Small*, 250 EDA 2018, 2018 WL 5317602 (Pa. Super. Oct. 29, 2018) (unpublished). The Superior Court panel detailed several bases for its disagreement with the PCRA court. First, the panel disagreed with the PCRA court's characterizations of Bell's 1993 testimony. Referencing Bell's testimony that Small "flipped out and started stabbing the guys," the Superior Court observed that this summary "lacked the detail of

---

[3] We do not reach the merits of either of Small's substantive claims for relief in this opinion, and thus offer no comment upon the PCRA court's reasoning.

[Bell's] trial testimony." *Id.*, slip op. at 7. Nonetheless, in the court's view, the testimony was "materially consistent with his trial testimony and defense." *Id.* Bell consistently had maintained that Small stabbed both victims, and that Bell had agreed to rob the victims but did not intend to assault or murder them. Since their joint trial, the Superior Court concluded, Small knew both Bell's version of the events and his motivation for testifying, and Bell's 1993 testimony therefore was not a newly discovered fact.

Most significantly for purposes of this appeal, the Superior Court further concluded that Bell's 1993 transcripts were a matter of public record, and therefore could not be considered "unknown" to Small. *Id.* at 7-8 (citing *Commonwealth v. Taylor*, 67 A.3d 1245, 1248 (Pa. 2013)). The panel recognized this Court's holding in *Burton* that the public record presumption "does not apply to *pro se* prisoner petitioners." *Id.* at 8 (quoting *Burton*, 158 A.3d at 620). Nonetheless, the court reasoned, Bell's testimony had been accessible since 1993, and the Superior Court had referenced it in two decisions, issued in 1995 and 1998. Small was represented by counsel on his third PCRA petition and appeal, from September 2008 to January 2013. Accordingly, "for over four years, from September 30, 2008 until January 10, 2013, [Small] was not a *pro se* prisoner, and Bell's testimony could not be considered 'unknown.'" *Id.* at 9. That is, due to Small's past representation, the court concluded that *Burton* was inapplicable, and the public record presumption remained in force, defeating Small's assertion of newly discovered facts.

As another basis for reversal, the Superior Court concluded that Small failed to comply with the sixty-day requirement of then-effective 42 Pa.C.S. § 9545(b)(2) (amended; *see supra* n.2). Small conceded that he discovered the 1998 Superior Court opinion in Bell's case on June 13, 2013, but did not file his *pro se* PCRA petition until July 22, 2014, thirteen months later. On this basis as well, the Superior Court deemed Small's petition untimely. *Small*, slip op. at 9-10. Relatedly, even if the PCRA court was correct

to deem the date that Small filed his *amended* petition to be the operative date for purposes of assessing timeliness, the Superior Court concluded, then the PCRA court erred in ordering that Small be provided with discovery before that date. *Id.* at 10 (citing 42 Pa.C.S. § 9545(a) ("No court shall have the authority to entertain a request for any form of relief in anticipation of the filing of a petition under this subchapter.")).[4]

Finding error on several distinct grounds, the Superior Court concluded that Small failed to satisfy the newly discovered fact exception. Thus, his petition was untimely, and the PCRA court lacked jurisdiction to consider Small's substantive claims for post-conviction relief. The court accordingly reversed the order of the PCRA court, reinstated Small's judgment of sentence, and remanded.

We granted Small's petition for allowance of appeal in order to review the Superior Court's treatment of *Burton* and the public record presumption. We further consider whether Small otherwise has established the applicability of the newly discovered fact exception.[5]

---

[4]    Although it appears that the transcripts at issue ultimately were obtained by Small's counsel, not the Commonwealth, the Superior Court referred to an order that the PCRA court issued on August 30, 2017, which, *inter alia*, directed the Commonwealth to produce the transcripts from Bell's post-conviction proceedings. If, as the PCRA court reasoned, Small's petition should be deemed filed on October 30, 2017—the date upon which he filed his amended petition—then, the Superior Court reasoned, the PCRA court erred in ordering discovery in anticipation of filing a PCRA petition, in violation of 42 Pa.C.S. § 9545(a).

[5]    Specifically, we granted review of the following questions, as framed by Small:

(1) Where Small did not receive notice of his co-defendant Larry Bell's 1993 PCRA hearing, and where Small has been continuously incarcerated, with only limited assistance of counsel on unrelated claims since that time, was Bell's PCRA testimony "unknown" to Small under *Commonwealth v. Burton*, 638 Pa. 687, 158 A.3d 618 (2017)?

(2) Has Small otherwise satisfied the requirements for an exception to the PCRA time-bar under 42 Pa.C.S. § 9545(b)(1)(ii) based on his co-

## II.

Small principally argues that this Court should expand upon *Burton* and simply eradicate the public record presumption entirely. Small highlights the *Burton* Court's discussion of the presumption's questionable origins and the absence of any express provision in the PCRA relating to public records or access thereto. Brief for Small at 28-29 (citing *Burton*, 158 A.3d at 632-33). Recognizing that the opinions of both the majority and the dissenting Justices in *Burton* stated that wholesale abrogation of the public record presumption was beyond the scope of the decision, Small argues that the instant case presents the Court with an opportunity to do so now. *Id.* at 30.

Small contends that the public record presumption is inconsistent with both the plain language of the PCRA and its purpose. As *Burton* highlighted, Small reiterates that the newly discovered fact exception makes no reference to public records; rather, it unambiguously sets forth only two elements: that "the facts upon which the claim is predicated were unknown to the petitioner," and that those facts "could not have been ascertained by the exercise of due diligence." *Id.* at 37 (quoting 42 Pa.C.S. § 9545(b)(1)(ii)). With regard to the intent and construction of the PCRA, Small highlights this Court's pronouncement that the PCRA was enacted "to provide a reasonable opportunity for those who have been wrongfully convicted to demonstrate the injustice of their conviction." *Id.* at 36 (quoting *Commonwealth v. Peterkin*, 722 A.2d 638, 643 (Pa. 1998)). Accordingly, we "must construe the provisions of the PCRA liberally to effect their objects and to promote justice." *Id.* (quoting *Bennett*, 930 A.2d at 1270 (internal quotation

---

defendant Bell's PCRA testimony, such that the PCRA court's grant of a new trial should be reinstated?

*Commonwealth v. Small*, 207 A.3d 289 (Pa. 2019) (*per curiam*) (brackets omitted).

marks omitted)). Because the public record presumption serves only to limit the right to seek relief, Small argues that it contravenes these principles.

The Superior Court's application of the presumption in this case ostensibly rested upon the expectation that Small's prior counsel, who earlier litigated a wholly unrelated claim on Small's behalf, apprised himself of all matters of public record. Small argues that this expectation is "not realistic." *Id.* at 32. Although PCRA counsel may have a duty to investigate matters lying outside the record, Small argues, the "role of counsel in seeking out and obtaining relevant information from the public record in a given engagement is highly context-dependent." *Id.* As support for his view, Small notes that the *Turner/Finley*[6] standard, which appointed PCRA counsel must satisfy before withdrawing from representation for want of a meritorious claim, requires only that PCRA counsel conduct a "thorough review of the *record*" for non-frivolous claims, not an extra-record investigation of all potentially useful public records. *Id.* at 33 (emphasis in original; quoting *Commonwealth v. Hampton*, 718 A.2d 1250, 1254 (Pa. Super. 1998)). Thus, Small contends that the assistance of counsel in earlier post-conviction proceedings is "far from a guarantee that all relevant matters of public record will become known on a timely basis to a PCRA petitioner." *Id.* at 34. In addition to the presumed discovery of existing records, Small observes, the public record presumption imposes an onerous obligation upon PCRA counsel to continuously monitor all potentially relevant public resources, notwithstanding the various burdens of doing so, and without regard to whether the petitioner has identified any particular record as a likely source of relevant material. *Id.* at 35.

---

[6] *Commonwealth v. Turner*, 544 A.2d 927 (Pa. 1988); *Commonwealth v. Finley*, 550 A.2d 213 (Pa. Super. 1988) (*en banc*); *see generally Commonwealth v. Pitts*, 981 A.2d 875 (Pa. 2009) (addressing appellate review of *Turner/Finley* "no-merit" letter).

Even if we decline to eliminate the public record presumption entirely, Small contends that he was entitled to the benefit of *Burton* because he "was indisputably a *pro se* prisoner at the time he filed his Fourth PCRA petition," and because he amply established that, due to his incarceration, he lacked earlier access to the information necessary to establish his substantive claims for relief. *Id.* at 31. Small closely tracks the PCRA court's analysis in the remainder of his arguments favoring the applicability of the newly discovered fact exception. He asserts that he acted with due diligence in his attempts to obtain the transcripts from Bell's 1993 hearings, that the PCRA's then-applicable sixty-day clock did not begin to run until he received those transcripts, and that his substantive claims were predicated upon the facts discovered therein, *i.e.*, the asserted discrepancies between Bell's trial testimony and the testimony offered during Bell's post-conviction proceedings. *Id.* at 38-46. Finally, assuming satisfaction of the time-bar exception, Small argues that he is entitled to a new trial upon the basis of after-discovered evidence, echoing the PCRA court's reasoning. *Id.* at 47-51.[7]

---

[7] Small's position is supported by several *amici curiae*, which have filed two briefs in this appeal. The Pennsylvania Innocence Project argues that our holding in *Burton* should be expanded so as to apply to all incarcerated individuals, regardless of whether or not they are proceeding *pro se. Amicus* contends that parsing the procedural history of a petitioner's case in order to determine the precise time periods of prior representation can raise complications, including determining what exactly qualifies as legal representation, and what the scope of that representation may have been. *Amicus* offers, for example, representation with respect to a civil claim under the Prison Litigation Reform Act, 42 Pa.C.S. §§ 6601-08, as a type of prior representation upon which it would be unjust to premise the application of the public record presumption in the PCRA context. Brief for *Amicus Curiae* Pennsylvania Innocence Project at 22. *Amicus* urges us to view our decision in *Burton* as animated by concern with the diminished access to public records generally, which applies to all prisoners regardless of *pro se* status.

*Amici* the Pennsylvania Association of Criminal Defense Lawyers and the American Civil Liberties Union of Pennsylvania separately argue that this Court should reexamine our decisions that have interpreted the PCRA's time restrictions to be jurisdictional in nature—an issue that is beyond the scope of the present appeal.

The Commonwealth counters that Bell's 1993 PCRA testimony was consistent with his trial testimony. In both proceedings, Bell consistently maintained that Small was the individual who stabbed Blake and McCrary. The Commonwealth notes that Bell even used the same language—that Small "flipped out" and stabbed the victims—in both his trial testimony and his post-conviction testimony. Brief for Commonwealth at 20 (comparing N.T., Trial, at 661, with N.T., Bell PCRA Hearing, 3/5/1993, at 12).[8] Moreover, Bell's purportedly new explanation of his motivation for testifying at trial is, in the Commonwealth's view, not newly discovered, because Bell's trial counsel implored the jury to convict Bell of robbery but acquit him of murder, *i.e.*, the same theory that Bell later identified as the reason that he chose to testify. *Id.* at 21. Finally, although the PCRA court placed some significance upon the fact that Bell, in 1993, did not testify regarding his initial impression that Small had "punched" the victims rather than stabbed them, Bell's trial testimony clearly reflected his understanding that Small had stabbed the victims. *Id.* at 21-22. Accordingly, the Commonwealth not only argues that Bell's 1993 testimony failed to reveal any exculpatory evidence concerning Small, but also that the testimony the PCRA court highlighted presented no "new" facts, because it was materially consistent with Bell's trial testimony and strategy, of which Small has been aware since 1983. The absence of any exculpatory evidence further serves as the heart of the Commonwealth's argument regarding the absence of merit in Small's claim of after-discovered evidence. *Id.* at 32-33.

---

[8] In point of fact, Bell testified at trial that he was planning to rob Blake and McCrary, but with regard to Small: "I didn't know he was going to go crazy or *freak out* on anybody." N.T., Trial, at 661 (emphasis added). By contrast, during his post-conviction proceedings, Bell testified that Small "*flipped out* and started stabbing the guys." N.T., Bell PCRA Hearing, 3/5/1993, at 12 (emphasis added). Although there is a slight variation in the colloquialism that Bell employed, the difference is insignificant. The Commonwealth's observation therefore is well-taken despite its minor misquotation of the cited testimony.

Rebutting Small's contentions regarding the remaining requisites of the newly discovered fact exception, the Commonwealth maintains that Small did not exercise due diligence because his prior counsel could have located the transcripts, and either Small or his daughter-in-law could have retained new counsel to assist him, but did not. With regard to Small's repeated attempts to obtain the transcripts, the Commonwealth argues that these constituted discovery requests, which under the PCRA require a showing of exceptional circumstances, and with which the Commonwealth has no duty to comply absent a court order. *Id.* at 30 (citing Pa.R.Crim.P. 902(E)(1) (providing that "no discovery shall be permitted" absent "a showing of exceptional circumstances")). As for the PCRA's then-effective sixty-day limitation, the Commonwealth stresses that, on Small's own account, he began searching for the transcripts on June 14, 2013, but did not file the instant PCRA petition for over one year. Contrary to the view of the PCRA court, the Commonwealth argues that Small was not precluded from seeking relief within sixty days of June 14, 2013. Indeed, Small sought relief within sixty days of that date based upon his knowledge at the time, but attempted to do so in federal court, not under the PCRA. Small then later filed the instant petition *pro se*, still never having seen the transcripts.

Turning to the central question, the Commonwealth argues that the public record presumption should be preserved as a general matter. It further contends that abolishing the presumption would make no difference to Small, in light of the alternative bases for dismissal that it has developed. The Commonwealth acknowledges that the language of the PCRA requires only that the asserted facts be unknown to the *petitioner.* However, the Commonwealth again stresses the due diligence component of the newly discovered fact exception, suggesting that, at least as it concerns formerly represented petitioners, the public record presumption should be viewed as applicable to the "due diligence" prong, rather than the "unknown" prong. *Id.* at 36. The Commonwealth argues that this

Court already has done so, in *Commonwealth v. Staton*, 184 A.3d 949, 957 (Pa. 2018), in which we held that the petitioner failed to establish that his trial counsel's alleged conflict of interest could not have been ascertained earlier with the exercise of due diligence, and noted that the petitioner had been represented by counsel at various points in the past. The Commonwealth argues that *Staton* controls the question presented here, and establishes that Small cannot satisfy the due diligence requirement due to his earlier representation.[9]

With regard to statutory interpretation, the Commonwealth observes that the General Assembly has amended the PCRA since this Court adopted the public record presumption, but has not repudiated it expressly. Accordingly, in the Commonwealth's view, the public record presumption effectively has become a part of the statutory scheme. Brief for Commonwealth at 37 (citing 1 Pa.C.S. § 1922(4)). Finally, the Commonwealth argues that the PCRA should be interpreted in a manner that advances the statute's interest in preserving the finality of criminal judgments, and "disregarding the reality that counseled petitioners have access to public records would needlessly denigrate the principle of finality." *Id.* at 40.

---

[9] We disagree that *Staton* is dispositive of our analysis here. *Staton* is readily distinguishable from the instant case, because we emphasized that the asserted new fact was accessible well before even the date of Staton's trial. *Staton*, 184 A.3d at 957. *Staton* also did not present the nuanced issue relating to the precise timing of past legal representation, and did not encompass a direct challenge to the validity of the public record presumption. *Staton*'s reference to the petitioner's prior representation was a component of our fact-specific assessment of due diligence, which we found lacking. This does not mean, as the Commonwealth suggests, that this Court merely shifted a categorical public record presumption from the "unknown" prong of the newly discovered fact exception to the "due diligence" prong. To the contrary, *Burton* called for case-specific analyses of *pro se* prisoners' knowledge and their exercise of due diligence. To resurrect the public record presumption for *pro se* prisoners simply by deeming it an interpretation of a different statutory term would not only elevate form over substance, but would defeat the entire purpose of our decision in *Burton*.

**III.**

Our standard of review in a PCRA appeal requires us to determine whether the PCRA court's findings of fact are supported by the record, and whether its conclusions of law are free from legal error. *Commonwealth v. Mason*, 130 A.3d 601, 617 (Pa. 2015). The scope of our review is limited to the findings of the PCRA court and the evidence of record, which we view in the light most favorable to the party who prevailed before that court. *Commonwealth v. Hanible*, 30 A.3d 426, 438 (Pa. 2011). Here, Small was the prevailing party. The PCRA court's factual findings and credibility determinations, when supported by the record, are binding upon this Court. *Mason*, 130 A.3d at 617. However, we review the PCRA court's legal conclusions *de novo*. *Id.*

Any PCRA petition, including a second or subsequent petition, must be filed within one year of the date that the petitioner's judgment of sentence becomes final. 42 Pa.C.S. § 9545(b)(1). We have construed the PCRA's timing provisions as jurisdictional in nature, and no court may entertain an untimely PCRA petition. *Burton*, 158 A.3d at 627 (citing *Commonwealth v. Brown*, 943 A.2d 264, 267 (Pa. 2008)). His judgment of sentence having become final decades ago, Small's fourth PCRA petition indisputably was untimely on its face. Accordingly, Small could establish jurisdiction in the PCRA court only by pleading and proving the applicability of an exception to the PCRA's time bar. The exception at issue here, as noted above, applies where "the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence." 42 Pa.C.S. § 9545(b)(1)(ii).

**A.**

As indicated by the central question presented, our analysis builds upon the foundation we laid in this Court's decision in *Burton*. Like Small, Burton was serving a prison sentence for murder when he learned of a development in his co-defendant's case

that revealed potentially exculpatory information, but had been a matter of public record for years before Burton discovered it. The PCRA court dismissed Burton's PCRA petition as untimely. A panel of the Superior Court initially reversed the PCRA court's order and remanded for an evidentiary hearing, but the Superior Court subsequently granted the Commonwealth's application for reargument and heard the matter *en banc*. A majority of the *en banc* panel again reversed the PCRA court's order, concluding that *pro se* prisoner petitioners like Burton should not be presumed to know facts available in the public record, so as to defeat their claims based upon newly discovered facts. *Commonwealth v. Burton*, 121 A.3d 1063 (Pa. Super. 2015) (*en banc*).

This Court embraced the reasoning of the Superior Court's *en banc* majority. We noted that the newly discovered fact exception, by its express terms, requires only that the petitioner plead and prove that "the facts upon which the claim is predicated were *unknown to the petitioner* and could not have been ascertained by the exercise of due diligence." *Burton*, 158 A.3d at 631-32 (quoting 42 Pa.C.S. § 9545(b)(1)(ii); emphasis in original). The "statute itself contains no exception, express *or* constructive, regarding information that is of public record." *Burton*, 158 A.3d at 632 (emphasis in original). Because the public record presumption exists only by virtue of judicial interpretation, the *Burton* Court traced the rule to its origin in *Commonwealth v. Lark*, 746 A.2d 585 (Pa. 2000).

In *Lark*, this Court deemed a *Batson*[10] claim to be timely based upon the release by the Philadelphia District Attorney's Office of a training video that instructed prosecutors to rely upon race and gender stereotypes in striking potential jurors. *Lark*, 746 A.2d at 588. The *Lark* Court rejected the *Batson* claim on the merits, but also rejected an

---

[10] *Batson v. Kentucky*, 476 U.S. 79 (1986) (holding that the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution forbids a prosecutor from challenging potential jurors solely on account of their race).

additional *Batson* argument due to Lark's failure to establish the newly discovered fact exception to the PCRA's time bar. Lark had highlighted a then-recent academic study of the Philadelphia courts, which addressed racially discriminatory jury selection practices. The *Lark* Court reasoned: "The statistics which comprise the study were of public record and cannot be said to have been 'unknown' to [Lark]. As such, this information does not fall within the purview of 42 Pa.C.S. § 9545(b)(1)(ii)." *Id.* at 588 n.4. In *Burton*, we criticized *Lark*, noting that it lacked legal or statutory support for its sweeping conclusion, and made no attempt to reconcile its holding with the specific language of 42 Pa.C.S. § 9545(b)(1)(ii). *Burton*, 158 A.3d at 632-33. Our subsequent decisions applying the presumption in *Chester* and *Commonwealth v. Whitney*, 817 A.2d 473, 478 (Pa. 2003), "simply cited the *Lark* footnote and contained no independent analysis or discussion." *Burton*, 158 A.3d at 633.

*Burton* contrasted the scant analyses of *Lark*, *Whitney*, and *Chester* with this Court's decision in *Bennett*. Bennett asserted that his trial counsel was ineffective, but the court nonetheless appointed his trial counsel to represent Bennett in his PCRA appeal, and counsel thereafter failed to file an appellate brief in the Superior Court, causing Bennett's appeal to be dismissed. *Bennett*, 930 A.2d at 1266. When Bennett later learned of the dismissal, he again sought relief under the PCRA, asserting that his now-untimely second PCRA petition satisfied the newly discovered fact exception because he had only recently learned that his allegedly ineffective trial counsel was appointed as appellate PCRA counsel, that counsel then abandoned him, and that the Superior Court dismissed his appeal. *Id.* at 1272. Because the Superior Court's order dismissing Bennett's appeal was publicly available, two of the dissenting Justices in *Bennett* opined that the order was not "unknown" to the petitioner for purposes of the newly discovered fact exception. The *Bennett* Majority disagreed, opining that rigid

application of a public record presumption would be "attractive in its simplicity," but would not give due consideration to the circumstances of the case. *Id.* at 1275. The Superior Court's dismissal order "was a matter of 'public record' only in the broadest sense." *Id.* Such orders, *Bennett* reasoned, are not sent directly to the prisoner, but instead to counsel, who there already had abandoned his client once. In light of that abandonment, we found "no other way in which a prisoner could access the 'public record.'" *Id. Bennett* thus distinguished earlier application of the public record presumption because "the matter of 'public record' does not appear to have been within [Bennett's] access." *Id.*

Although counsel's abandonment was a significant consideration in *Bennett*, in *Burton* we observed that the ruling in *Bennett* also was driven by Bennett's lack of access to public records in prison. Addressing that latter rationale in greater detail, we considered the arguments of *amici curiae*, Pennsylvania Exonerees, composed of former *pro se* prisoners who had been exonerated and released from incarceration. *Amici* provided insight into the limited avenues available for legal research in prisons, as well as inmates' relative lack of access to public records. *Burton*, 158 A.3d at 636-37. We found this diminished access to be significant, and adopted "the essence of our holding in *Bennett*." *Id.* at 638. We concluded:

> [T]he presumption that information which is of public record cannot be deemed "unknown" for purposes of subsection 9545(b)(1)(ii) does not apply to *pro se* prisoner petitioners. As discussed above, the application of the public record presumption to *pro se* prisoners is contrary to the plain language of subsection 9545(b)(1)(ii) and was imposed without any apparent consideration of a *pro se* prisoner's actual access to information of public record. We find nothing presented in the instant appeal to undermine the implicit conclusion we made in *Bennett* that prisoners' access to public records is distinctly compromised; indeed, there is much to support that conclusion.

*Id.* (footnote omitted). We directed future PCRA courts considering similar petitions to employ the statutory language, and to determine whether "the facts upon which the claim

is predicated were unknown to the petitioner," which may require a hearing. "After the PCRA court makes a determination as to the petitioner's knowledge, it should then proceed to consider whether, if the facts were unknown to the petitioner, the facts could have been ascertained by the exercise of due diligence, including an assessment of the petitioner's access to public records." *Id.*

The majority opinion in *Burton* was authored by Justice Todd and joined by Chief Justice Saylor and this author, thus garnering a majority of the five-member Court. Justice Donohue and Justice Mundy did not participate in the decision of *Burton*. Chief Justice Saylor authored a concurring opinion, expressing his agreement with the majority's holding based upon *Bennett* and the majority's development thereof, but reiterating a point of disagreement with *Bennett*'s statutory analysis. *Id.* at 638-39 (Saylor, C.J., concurring) (citing *Bennett*, 930 A.2d at 1275-80 (Saylor, J., dissenting)).

Justice Baer dissented in an opinion joined by Justice Dougherty. Justice Baer questioned the majority's reliance upon the extra-record material offered by *amici*, and rejected the creation of a "status-based exception" to the public record presumption that "swallows nearly the entirety of the rule given that incarcerated *pro se* petitioners constitute the group of PCRA petitioners who regularly invokes and relies upon the exceptions to the PCRA's time-bar." *Id.* at 639 (Baer, J., dissenting). Anticipating the difficulty that precipitated the instant appeal, Justice Baer found it unclear *when* an incarcerated petitioner must have been *pro se* in order to benefit, and asked: "does the incarcerated petitioner have to be *pro se* when the 'unknown fact' occurred, when it became publicly accessible, or when he files his PCRA petition?" *Id.* at 639 n.3. Although Justice Baer recognized that the validity or prudence of the public record presumption itself was not at issue in *Burton*, he agreed with the Majority that the "presumption may be in tension with the statutory language which governs the newly-discovered-facts

exception," and suggested that this Court perhaps "should reconsider the public record presumption in general if that opportunity presents itself" in a future case. *Id.* at 640-41.

Unlike *Burton*, the instant appeal presents a direct challenge to the public record presumption. We agree with Small that the time has come to correct our precedent. As both the *Burton* Majority and Justice Baer in dissent recognized, the plain language of the newly discovered fact exception does not call for any assessment of whether the asserted facts appear in the public record. It merely requires that the "facts" upon which the petitioner's claim is predicated were "unknown to the petitioner and could not have been ascertained by the exercise of due diligence." 42 Pa.C.S. § 9545(b)(1)(ii). This language plainly calls for a circumstance-dependent analysis of the petitioner's knowledge, not that of the public at large. "In requiring that the facts be *unknown to the petitioner*, the statute itself contains no exception, express *or* constructive, regarding information that is of public record." *Burton*, 158 A.3d at 632 (emphasis in original).

Our decision in *Burton* suggested a restoration of the primacy of the statutory language. *Burton*'s exception for *pro se* prisoners reflected a sensible understanding that incarcerated individuals enjoy only limited access to public records. Absent a challenge to the presumption itself, however, this Court could go only so far, despite our unanimous recognition of the tension between the statutory language and this Court's interpretation of it. As Justice Baer observed, however, difficulties remain. The determination of when representation should be dispositive remains a complication. *See id.* at 639 n.3 (Baer, J., dissenting). Assessing whether a petitioner is, in fact, represented, or is instead only a prospective client, can also be a challenge. *See, e.g., Commonwealth v. Brensinger*, 218 A.3d 440, 450-53 & n.10 (Pa. Super. 2019) (*en banc*). Further, although incarcerated *pro se* petitioners now are entitled to application of the statute as written, those who are not incarcerated, or who are represented by counsel, remain subject to a rigid presumption

of judicial invention that can overcome their otherwise meritorious assertions of newly discovered facts.

The public record presumption exists only because this Court engrafted it upon the statutory language in *Lark*, and then perpetuated our extra-statutory innovation in later cases such as *Chester* and *Whitney* without meaningful discussion. *Burton*, 158 A.3d at 633. But as in all matters of statutory construction, the plain language of the law must govern. *See* 1 Pa.C.S. § 1921(b) ("When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit."). There is nothing ambiguous about the statute's reference to facts that were "unknown to the petitioner." 42 Pa.C.S. § 9545(b)(1)(ii). Although "due diligence," *id.*, is a flexible concept that varies with the context of a given case, it is a term of art well-understood by courts. Even assuming, *arguendo*, that any portion of the newly discovered fact exception could be deemed ambiguous, resolving any such ambiguity does not require the creation of a categorical rule of exclusion based upon a single factor with respect to which the statute is silent.

It takes little imagination to appreciate the ways in which the public record presumption can lead to results in tension with the statutory language. In any circumstance in which a PCRA petitioner can establish the facial requirements of the newly discovered fact exception, but the court rejects the claim merely due to the earlier public availability of the information, the court is overriding the language of the PCRA. "[I]t is not for the courts to add, by interpretation, to a statute, a requirement which the legislature did not see fit to include." *Commonwealth v. Wright*, 14 A.3d 798, 814 (Pa. 2011) (quoting *Commonwealth v. Rieck Inv. Corp.*, 213 A.2d 277, 282 (Pa. 1965)). The instant case provides one such example of the severe consequences that can result. The content of the asserted public record here was not widely reported in a newspaper or

available online—it was a paper transcript from 1993, which was locked away in court storage. As in *Bennett*, the transcript "was a matter of 'public record' only in the broadest sense." *Bennett*, 930 A.2d at 1275. To presume that all members of the public know the contents of such a document is an absurdity that the language of the PCRA neither requires nor tolerates.

It bears emphasizing that the public record presumption serves only a gatekeeping function, precluding the petitioner from invoking a time-bar exception, which, in turn, precludes the court from reaching the substantive merits of the petition. Although rote application of the presumption is "attractive in its simplicity," *id.* at 1275, our duty is not to streamline the process of denying potentially meritorious claims. Courts must apply statutes as they are written.

In the instant appeal, the Commonwealth's advocacy focuses primarily upon the facts and case-specific circumstances, which we will resolve in Part III(B), *infra*. As for the broader question of the continued viability of the public record presumption, the Commonwealth primarily advances two principles of statutory construction. The Commonwealth contends that the PCRA embodies the legislature's intent to advance the interest in the finality of judgments. Brief for Commonwealth at 39-40. However, when a statute is clear and free from ambiguity, we do not disregard its language in pursuit of its spirit. 1 Pa.C.S. § 1921(b). Moreover, even if we go beyond the plain language, the purpose of the PCRA is not simply to preclude relief for all time, a draconian means of advancing finality. To the contrary, the PCRA "provides for an action by which persons convicted of crimes they did not commit and persons serving illegal sentences may obtain collateral relief." 42 Pa.C.S. § 9542. The PCRA provides a mechanism to *obtain* collateral relief; finality of a judgment is merely a consequence of the denial of such relief. In any event, the Commonwealth's argument is at odds with our previous conclusion that

"we must construe the provisions of the PCRA liberally 'to effect their objects and to promote justice.'" *Bennett*, 930 A.2d at 1270 (quoting 1 Pa.C.S. § 1928(c)).

The Commonwealth further cites the interpretive presumption that the General Assembly implicitly endorses this Court's interpretation of statutory language when it amends the statute and declines to correct us. *See* Brief for Commonwealth at 37-38; 1 Pa.C.S. § 1922(4) (court may presume "[t]hat when a court of last resort has construed the language used in a statute, the General Assembly in subsequent statutes on the same subject matter intends the same construction to be placed upon such language"). Although the Commonwealth's point is well-taken, we do not view the asserted presumption to be controlling. Application of this presumption is discretionary, not mandatory. *Id.* § 1922 ("the following presumptions, among others, *may* be used") (emphasis added). Although there are certainly circumstances in which this presumption can be helpful, and although "the legislative body is free to correct any errant interpretation of its intentions," *Commonwealth v. Hunt*, 983 A.2d 627, 638 (Pa. 2009) (quoting *Shambach v. Bickhart*, 845 A.2d 793, 807 (Pa. 2004) (Saylor, J. concurring)), this Court's departure from the plain language of a statute should not be viewed categorically as placing the burden upon the General Assembly to detect our error and to marshal the resources to correct it. The General Assembly makes its intent known through the statutory language, itself. And ultimately it is this Court that is responsible for its own precedent.

As for our precedent, we do not take lightly the decision to depart therefrom. But *stare decisis* has its limits. While "*stare decisis* serves invaluable and salutary principles, it is not an inexorable command to be followed blindly when such adherence leads to perpetuating error." *Stilp v. Commonwealth*, 905 A.2d 918, 967 (Pa. 2006). Indeed, particularly when this Court's prior cases have "distorted the clear intention of the

legislative enactment and by that erroneous interpretation permitted the policy of that legislative enactment and by that erroneous interpretation permitted the policy of that legislation to be effectively frustrated," this Court has "no alternative but to rectify our earlier pronouncements and may not blindly adhere to the past rulings out of a deference to antiquity." *Mayhugh v. Coon*, 331 A.2d 452, 456 (Pa. 1975). As established above, because the public record presumption stands in tension with the plain language of the newly discovered fact exception, because we have recognized its deficiencies already in *Burton*,[11] and because the instant appeal presents a direct challenge to its continued application, it is our prerogative and our duty to steer our precedent back toward the language of the statute from which we have strayed. Accordingly, we disavow the public record presumption. To the extent that earlier decisions, including our own, relied upon and applied that presumption to reject a petitioner's claim, they now are overruled.[12]

---

[11] Chief Justice Saylor maintains that the public record presumption "reflects a reasonable interpretation of Section 9545(b)(1)(ii)'s requirement that, to implicate the relevant exception to the PCRA's one-year time bar, newly discovered facts 'could not have been ascertained by the exercise of due diligence.'" Conc. & Diss. Op. at 1 (Saylor, C.J.) (quoting 42 Pa.C.S. § 9545(b)(1)(ii)). However, he would "refine" the presumption by examining "whether [the petitioner's] inquiry should have been focused on the relevant subject matter," and by clarifying that the presumption may be rebutted with a showing that, despite the exercise of diligence, the petitioner was unable to discover the documents in question. *Id.* at 2. Respectfully, while these refinements might comprise salutary adjustments to the pre-*Burton* status quo, they also illustrate the unnecessary difficulties created by preserving the flawed, extra-textual public record exception. Combined with the concerns Justice Baer expressed in *Burton* and those raised in the foregoing discussion, what we find are persistent questions about how to apply the presumption fairly and with sensitivity to the difficulties lay people, and especially prisoners, may encounter obtaining even information that technically is accessible to the general public—difficulties associated both with knowing that such information is relevant and exists and with obtaining it. Presumptions serve their purpose only when they simplify areas of inquiry. But the public record presumption confuses more than it clarifies, and superimposing additional refinements in an effort to bring the presumption's operation into sync with the realities faced by prisoners only complicates the matter.

[12] These decisions include *Taylor*, 67 A.3d at 1248-49; *Commonwealth v. Edmiston*, 65 A.3d 339, 352-53 (Pa. 2013); *Commonwealth v. Lopez*, 51 A.3d 195, 196 (Pa. 2012) (*per curiam*); *Commonwealth v. Hawkins*, 953 A.2d 1248, 1255 (Pa. 2006) (Opinion

**B.**

That Small is relieved of the public record presumption does not mean that Small prevails. The public record presumption has operated only as a barrier to entry; without it, the textual requirements of the time-bar exception remain. The Superior Court concluded that Bell's 1993 PCRA testimony was materially similar to his trial presentation, and thus did not reveal any previously unknown facts. The Commonwealth adeptly develops this point. We reiterate *Bennett*'s conclusion that the newly discovered fact exception "does not require any merits analysis of the underlying claim," and application of the time-bar exception therefore does not necessitate proof of the elements of a claim of after-discovered evidence. *Bennett*, 930 A.2d at 1271 (discussing *Commonwealth v. Lambert*, 884 A.2d 848 (Pa. 2005)). Nonetheless, the statutory language commands that the operative "facts" be "unknown" to the petitioner. 42 Pa.C.S. § 9545(b)(1)(ii).

Even when viewed in the light most favorable to Small as the prevailing party, *Hanible*, 30 A.3d at 438, the record does not support the PCRA court's finding that Bell's 1993 testimony reflected "a new story of the robbery and murder with a newly added motive for [Bell's] testimony," that conflicted with Bell's trial testimony. PCRA Ct. Op. at 42. After a review of the record of both proceedings, as well as the parties' arguments, it is clear that the Superior Court correctly deemed Bell's 1993 testimony to be "materially consistent with his trial testimony and defense." *Small*, slip op. at 7.

It is true that Bell's 1993 testimony omitted details from the sequence of events that he described at trial, but during his 1993 PCRA proceedings, Bell was asked to provide a summary of how the murder occurred, which Bell condensed into a single sentence: "We entered the apartment and [Small] flipped out and started stabbing the

---

Announcing the Judgment of the Court); *Chester*, 895 A.2d at 523-24; *Whitney*, 817 A.2d at 476; and *Lark*, 746 A.2d at 588 n.4.

guys." N.T., Bell PCRA Hearing, 3/5/1993, at 12. This was not a recantation of Bell's trial testimony. Bell continued to assert that Small was the individual who stabbed Blake and McCrary, and, as the Commonwealth highlights, he used very similar language in describing the incident at trial. *See supra* n.8. Despite the PCRA court's emphasis upon the later absence of any reference to Bell's initial impression that Small was "punching" the victims rather than stabbing them, Bell's trial testimony undoubtedly reflected his assertion that Small had stabbed Blake and McCrary, and that assertion was communicated to Small at trial. Thus, Small has known the substance of Bell's version of the events since their joint trial in 1983, and neither Bell's later summary nor his omission of minor details constitute a "new story" of the events. Likewise, the Commonwealth persuasively establishes that Bell's motivation for testifying at trial was no secret; Bell expressly disclaimed any intent to assault or murder the victims despite his participation in the robbery, and his counsel argued this to the jury as a basis to acquit Bell of murder. Accordingly, none of the facts that the PCRA court highlighted can be deemed "unknown" under the circumstances of this case.

Small's assertion of newly discovered facts is not foreclosed pursuant to a categorical presumption regarding matters of public record. However, because the Commonwealth has established that the factual record does not support Small's position on the statutory requirements, Small nonetheless cannot establish the applicability of an exception to the PCRA's time bar, and the PCRA court accordingly lacked jurisdiction to award him relief upon his substantive claims.

The order of the Superior Court is affirmed.

Justices Baer, Todd and Donohue join the opinion.

Chief Justice Saylor files a concurring and dissenting opinion.

Justice Dougherty files a concurring and dissenting opinion in which Justice Mundy joins.