IN THE SUPREME COURT OF PENNSYLVANIA
EASTERN DISTRICT

**BAER, C.J., SAYLOR, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 787 CAP |
| | : | |
| Appellee | : | Appeal from the Order entered on |
| | : | March 18, 2020 in the Court of |
| | : | Common Pleas, Lehigh County, |
| v. | : | Criminal Division at No. CP-39-CR- |
| | : | 0001894-1995 |
| | : | |
| GEORGE IVAN LOPEZ, | : | SUBMITTED:  December 23, 2020 |
| | : | |
| Appellant | : | |

**OPINION**

**JUSTICE DONOHUE**                                        **DECIDED:  April 29, 2021**

In this serial capital post-conviction appeal, George Ivan Lopez ("Lopez") challenges the order of the Court of Common Pleas of Lehigh County dismissing as untimely his petition for relief filed pursuant to the Post Conviction Relief Act, 42 Pa.C.S. §§ 9541-9546 ("PCRA").  In the current PCRA petition, Lopez claims that at his trial, the prosecution had entered into a plea deal with an important witness in exchange for testimony against him that was substantially better than what the prosecutor and the witness told the jury.  Lopez requests that this Court vacate the PCRA court's dismissal and remand the case for an evidentiary hearing.  We agree with the PCRA court's conclusion that it did not have jurisdiction over this claim.  Specifically, we conclude that Lopez failed to demonstrate that the facts upon which the current claim is predicated were

previously unknown to him so as to satisfy the newly-discovered evidence timeliness exception in section 9545(b)(1)(ii).

On direct appeal, we described the factual background underlying Lopez's convictions in detail. *Commonwealth v. Lopez*, 739 A.2d 485, 489–93 (Pa. 1999). Relevant to this appeal, Lopez and his associates – Edwin Romero, George Barbosa, and (Lopez's nephew) Miguel Moreno – lured architect and landlord David Bolasky to an upstairs apartment in an Allentown apartment building. After taking Bolasky upstairs, Moreno went to a downstairs apartment and distracted the occupants so they would not hear or interrupt the crimes occurring above them. During that time, Lopez, Romero and Barbosa beat, robbed, and strangled Bolasky to death.

In his opening statement at a joint trial for Lopez and Romero, the prosecutor stated that "in exchange for [providing critical] information, the Commonwealth agreed not to pursue the death penalty against Miguel Moreno. That's a deal with the devil. The prosecutor has lived up to its side of it. We're not pursuing the death penalty against Miguel Moreno." *Id.* at 39–40. In his subsequent testimony regarding the group's plan to lure, rob and kill Bolasky, Moreno indicated in exchange for testifying against Lopez, the Commonwealth had agreed not to pursue the death penalty against him. N.T., 3/11/1996, at 39. On cross-examination, Moreno testified that he did not have a specific deal with the prosecution:

Q.    What's your deal?

A.    I ain't got no deal. Just that no death penalty.

Q.    Did the District Attorney promise you you would get life imprisonment?

A.    Yes.

Q.     And that's gonna be your sentence?

A.     I figure yes.

N.T., 3/12/1996, at 57.

The jury convicted Lopez and Romero of first-degree murder, 18 Pa.C.S. § 1102, and related offenses. At the penalty phase, the jury found two aggravating circumstances and no mitigating circumstances, and returned a sentence of death for Lopez. On April 17, 1996, the trial court imposed a sentence of death. On July 19, 1996, Moreno pled guilty to third-degree murder and was sentenced to a term of twenty to forty years of incarceration. *Commonwealth v. Moreno*, No. 1995/2012, at 56–57 (sentencing transcript).

This Court affirmed the judgment of sentence on October 1, 1999, *Commonwealth v. Lopez*, 739 A.2d 485 (Pa. 1999), and the United States Supreme Court denied certiorari on May 30, 2000, *Lopez v. Pennsylvania*, 530 U.S. 1206 (2000). On August 23, 2000, Lopez filed his first PCRA petition, raising issues not relevant to the present appeal. This Court denied the PCRA court's dismissal of that petition in 2004. *Commonwealth v. Lopez*, 854 A.2d 465 (Pa. 2004).

On April 27, 2005, Lopez filed a federal habeas petition (hereinafter, the "Habeas Petition"), raising for the first time a claim regarding the nature of Moreno's plea deal. Lopez asserted that contrary to what the jury had been told, an agreement existed between the Commonwealth and Moreno for Moreno to receive a substantially reduced sentence in exchange for his trial testimony. Lopez's Memorandum of Law in Support of Petition for a Writ of Habeas Corpus, 6/12/2015, at 86. He contended that Moreno "in reality … received a sentence of 20–40 years" despite that Moreno "testified that he was

to receive a life sentence in exchange for his testimony[.]" *Id.* Lopez argued that the Commonwealth concealed the alleged plea agreement from the defense and thus violated *Brady v. Maryland*, 373 U.S. 83 (1963) and *United States v. Giglio*, 405 U.S. 150 (1972)[1] by failing to disclose important impeachment evidence. Lopez's Memorandum of Law in Support of Petition for a Writ of Habeas Corpus, 6/12/2015, at 86–87.

Shortly thereafter, on May 9, 2005, Lopez filed his second PCRA petition (hereinafter, the "Second PCRA Petition"), raising, inter alia, a claim substantially identical to the one just asserted in his Habeas Petition, namely that an undisclosed agreement existed between the Commonwealth and Moreno for a substantially reduced sentence in exchange for Moreno's trial testimony. Second PCRA Petition, 5/9/2005, at 116. In support of this claim, Lopez cited to a 2000 evidentiary hearing in connection with co-defendant Romero's PCRA petition. *Id.* at 117 – 18. At that hearing, Moreno was questioned about his sentence of twenty to forty years of incarceration. Lopez emphasized the following exchange between Moreno and Romero's PCRA counsel:

> Q. … [T]hat [testimony against Lopez and Romero] was in return for the 20 and 40 year sentence that you received; correct?
>
> A. Well, not really.
>
> Q. You didn't have a deal?
>
> A. Yes, I did.

---

[1] *Brady* provides that "the suppression by the prosecution of evidence favorable to the accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87. According to *Giglio*, a promise that the government would extend leniency in exchange for a witness's testimony is relevant to the witness's credibility and must be disclosed to the defense. *Giglio*, 405 U.S. at 154 – 55.

Q. What was the deal?

A. No.

*Id.* Lopez interpreted Moreno's testimony as indicating that the actual plea deal was a "specific deal" for a "substantial reduction from the life sentence that Moreno testified at trial he believed he would have received." *Id.* at 118. He went on to argue that the "incredibly lenient nature of this deal" gave "Moreno every incentive to color his testimony at trial in a manner favorable to the prosecution." *Id.* Again mirroring the allegations in his Habeas Petition, Lopez argued that "[c]ross-examination as to the favorable nature of his deal would have been essential for appropriate impeachment," but that [b]ecause the information was not turned over to the defense … this powerful impeachment could not be used." *Id.*

This claim was one of more than twenty ineffective assistance of counsel claims set forth by Lopez in the Second PCRA Petition. Lopez argued that all of these claims resulted from his trial counsel's ongoing disciplinary proceedings, about which he (Lopez) was unaware, and which created a clear conflict of interest, as trial counsel did not prepare or investigate adequately in an attempt both to obtain significant counsel fees before a possible suspension of his law license and to obtain a favorable reference from the local prosecutor's office. *Id.* at 4–5. The PCRA court dismissed the Second PCRA Petition as untimely and this Court affirmed, ruling that trial counsel's disciplinary records had been publicly available for years, including at the time when his first PCRA petition had been prepared. *Commonwealth v. Lopez*, 51 A.3d 195, 197 (Pa. 2012) (per curiam), *overruled by Commonwealth v. Small*, 238 A.3d 1267 (Pa. 2020) (in which the Court

eradicated the "public records exception" in *Commonwealth v. Burton*, 158 A.3d 618 (Pa. 2017), with respect to facts unknown to the petitioner).

Lopez subsequently filed two additional PCRA petitions, neither of which raised claims regarding the Moreno plea deal. This Court affirmed both dismissals. *Commonwealth v. Lopez*, 161 A.3d 171 (Pa. 2017); *Commonwealth v. Lopez*, 196 A.3d 603 (Pa. 2018).

On November 18, 2019, Lopez filed his fifth PCRA petition (hereinafter, the "Fifth PCRA Petition"). As in his Habeas Petition and Second PCRA Petition, Lopez again asserts that there had been an agreement between the Commonwealth and Moreno for a substantially reduced sentence in exchange for Moreno's testimony. Specifically, Lopez alleged that Moreno "had an [a]greement and deal to testify against [Lopez]" better than the life sentence to which Moreno testified at trial. Fifth PCRA petition, 11/18/2019, at 3. In support, Lopez indicated that he learned in September 2019 that Moreno had testified, in 2003, that there was an agreement for him to testify in exchange for a substantially reduced sentence. *Id*. at 3, 7–8. He attached to the Fifth PCRA Petition a petition for writ of habeas corpus filed by Moreno in the Eastern District of Pennsylvania on February 28, 2003, in which Moreno had asserted that he "was advised by trial counsel … that he … would only receive a total of 8½ to 15 years of imprisonment on all counts of the indictment." Moreno's Federal Habeas Petition, 2/23/2003, at 7. Lopez reiterated that the alleged plea deal was concealed from him, in violation of the principles espoused in *Brady v. Maryland*, 373 U.S. 83 (1963) and *United States v. Giglio*, 405 U.S. 150 (1972). Fifth PCRA Petition, 11/18/2019, at 4. Finally, he claimed that his current PCRA petition, although facially untimely, met the requirements of the newly-discovered facts exception

to the one-year PCRA time bar, as he did not learn about Moreno's 2003 habeas petition until 2019 and filed the Fifth PCRA Petition expeditiously thereafter. *Id.*

The PCRA court issued a notice of intent to dismiss the PCRA petition pursuant to Pennsylvania Rule of Criminal Procedure 907(1),[2] citing a lack of timeliness. In a response, Lopez noted that he had attached a copy of Moreno's petition to his Fifth PCRA Petition and that, while it was filed in 2003, "there was no record" of it, and that he "did not learn[] of the existence of [said habeas corpus petition] until after the [f]ederally [o]rdered [d]eposition" of Moreno's lawyer in September, 2019. Lopez's Response to Rule 907 Notice, 2/6/2020, at 3. Lopez further insisted that he exercised due diligence, listing his various attempts to uncover information about Moreno's plea deal. *Id.* at 4–5. He then asserted that there are genuine issues of material fact requiring an evidentiary hearing. *Id.* at 5–6.

On March 18, 2020, the PCRA court dismissed Lopez's fifth PCRA petition. Lopez appealed. Upon order of the PCRA court, he filed a timely statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Lopez's 1925(b) Statement, 5/19/2020, at 1-2. The PCRA court found that these issues were the same as those "raised in his serial PCRA petitions, including the most recent one filed November 18, 2019." PCRA Court Order, 6/24/2020, at 1 n.1. Because the issues were "sufficiently addressed" in previous orders denying Lopez's serial PCRA petitions, the PCRA court found the appeal to be "without merit[.]" *Id.*

---

[2] *See* Pa.R.Crim.P. 907(1) (providing that "[i]f the judge is satisfied from this review that there are no genuine issues concerning any material fact and that the defendant is not entitled to post-conviction collateral relief, and no purpose would be served by any further proceedings, the judge shall give notice to the parties of the intention to dismiss the petition and shall state in the notice the reasons for the dismissal").

On appeal to this Court, Lopez presents three issues for our review:

> The trial court abused its discretion, and made an error of law, when it made false and misleading statements in both its January 23rd and March 18th, 2020 Orders that denied Appellant's Due Process and Equal Protections Claims.
>
> The trial court abused its discretion and made an[] error of law by denying Appellant his Due Process rights to [a]mend and his right to an evidentiary hearing on newly discovered evidence.
>
> The trial court abused its discretion based upon an erroneous finding of fact[,] which deprived Appellant of his constitutionally protected rights to Due Process and Equal Protection of Law.

Lopez's Brief at 2. In reviewing a denial of PCRA relief, we look to whether the lower court's factual determinations are supported by the record and are free of legal error. *Commonwealth v. Spotz*, 18 A.3d 244, 259 (Pa. 2011). With respect to the PCRA court's legal conclusions, we apply a de novo standard of review. *Id.* In reviewing credibility determinations, we are bound by the PCRA court's findings so long as they are supported by the record. The PCRA court's findings and the evidence of record are viewed in the light most favorable to the Commonwealth as the winner before the PCRA court. *Commonwealth v. Hanible*, 30 A.3d 426, 438 (Pa. 2011).

In his brief filed with this Court, Lopez argues that the PCRA court is biased against pro se litigants generally and him specifically. Lopez's Brief at 7. The bias against him was demonstrated when the court "refus[ed] to acknowledge newly discovered, highly probative evidence" and would not recognize that "concealment of the deal between the Commonwealth and the Linchpin Moreno was egregious prosecutorial misconduct." *Id.* at 8. According to Lopez, Moreno's 2003 habeas petition "revealed the existence of a

plea negotiation (8 ½ – 15 years) that was undisclosed to Lopez." *Id.* at 7. Lopez argues that he is entitled to "a remand for the evidentiary hearing necessary to further develop this claim which warrants a new trial," because "[t]he fact that the Commonwealth willfully withheld Moreno's deal can be proven by the new evidence."[3] *Id.* at 7.

In response, the Commonwealth maintains that Lopez "claimed in his 2005 [Habeas Petition] that Moreno had an undisclosed agreement at trial for a reduced sentence. Commonwealth's Brief at 14. The Commonwealth also notes that the federal court rejected the Habeas Petition on July 1, 2020. *Id.* at 15 (citing *Lopez v. Beard*, No. CV 04-4181, 2020 WL 4201507 (E.D.Pa. July 1, 2020)). The Commonwealth concludes, "[b]ecause he raised the same claim in his 2005 counseled habeas petition in federal court, and the 2003 Moreno habeas petition was available to him through his own federal habeas counsel, meeting the timeliness exception in his [fifth] PCRA petition was not possible, though he did not plead it." *Id.* at 15.

In a reply brief, Lopez continues to assert that there was an undisclosed deal between the Commonwealth and Moreno. Lopez's Reply Brief at 4. In response to the Commonwealth's argument that Lopez already raised this claim through his Habeas Petition and his Second PCRA Petition, Lopez asserts that "this claim has never fully been developed and/or adjudicated in the state court[,]" and that the federal court denied the claim because it was not adequately developed in state court. *Id.* at 5.

---

[3] Throughout his Fifth PCRA Petition and the brief filed with this Court, Lopez criticizes the Commonwealth for misrepresenting and concealing Moreno's plea deal. However, he does not suggest that his claim is timely under the first timeliness exception related to governmental interference. *See* 42 Pa.C.S. 9545(b)(1)(i) ("the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States").

The PCRA requires that any PCRA petition be filed within one year of the date that the petitioner's judgment of sentence becomes final. 42 Pa.C.S. § 9545(b)(1). This one-year limitation is jurisdictional and therefore, courts are prohibited from considering an untimely PCRA petition. *Small*, 238 A.3d at 1280 (citing *Burton*, 158 A.3d at 627). Because Lopez's judgment of sentence became final more than twenty years ago, his Fifth PCRA Petition is untimely on its face. To establish the PCRA court's jurisdiction, Lopez must therefore plead and prove the applicability of an exception to the PCRA's time bar. 42 Pa.C.S. § 9545(b)(1)(i)–(iii). In this case, Lopez asserts that his Fifth PCRA Petition satisfies the "newly-discovered evidence" exception in Section 9545(b)(1)(ii), which requires a petitioner to allege and prove that "the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence." 42 Pa.C.S. § 9545(b)(1)(ii); *see also Commonwealth v. Bennett*, 930 A.2d 1264, 1270–72 (Pa. 2007). Any petition asserting the newly-discovered evidence exception must be filed within one year of the date on which the claim could have been raised. *Id*. § 9545(b)(2). Finally, and significant in this case, this Court has held that the focus of this exception "is on the newly discovered facts, **not on a newly discovered or newly willing source for previously known facts**." *Commonwealth v. Marshall*, 947 A.2d 714, 720 (Pa. 2008) (emphasis added);[4] *Small*,

---

[4] In *Marshall*, we rejected a petitioner's attempt to revive a claim he had made a decade earlier by pointing to his recent discovery regarding the identity of an author of notes reflecting a lecture describing questionable practices used in jury selection. *Id*. The petitioner asserted that his claim met the (b)(1)(ii) exception because it was raised within sixty days of discovery of the authorship of those notes. At that time, subsection 9545(b)(2) required that claims be brought within sixty days of the discovery of the facts underlying the claims. *Id.* at 721. We disagreed, explaining that the notes were "simply another, albeit more specific, source for the same allegations of racial discrimination in

238 A.3d at 1287 (revelation of a witness's testimony given in another proceeding that was materially consistent with his testimony at trial cannot be deemed "unknown" to satisfy the exception in Section 9545(b)(1)(ii)); *Commonwealth v. Burton*, 158 A.3d 618, 629 (Pa. 2017); *Commonwealth v. Ali*, 86 A.3d 173, 182 Pa. (Pa. 2014); *see also Commonwealth v. Morrow*, 2021 WL 387200, at *3 (Pa. Super. Feb. 3, 2021).

Lopez's claim in his Fifth PCRA Petition is predicated upon the same facts that supported his claims in his 2005 Habeas Petition and his Second PCRA Petition – specifically that an undisclosed plea deal existed between Moreno and the Commonwealth, pursuant to which he would receive a significantly shorter sentence than what the jury was told (i.e., that he would be spared the death penalty in favor of a life sentence). Significantly, Lopez has known about these facts since at least 2005, when he set them forth in his federal and state petitions for relief from his death sentence. The only material difference for the claim in his Fifth PCRA Petition from the substantially identical claims in his 2005 petitions is that he now cites to a **new source** as support for them, namely Moreno's 2003 habeas petition. The substance of all three claims, however, is precisely the same, namely a plea deal for a substantially shorter sentence than life imprisonment, which if known to Lopez could have been used as a basis for impeachment purposes against Moreno during his cross-examination.

The only "fact" in his present Fifth PCRA Petition different from those in his Habeas Petition and his Second PCRA Petition is the length of the alleged plea deal (eight and one half to fifteen years, rather than twenty to forty years). This is, however a distinction

---

jury selection in the Philadelphia District Attorney's Office that were leveled in 1997." *Id.* at 722. He "merely offered another source for claims of discrimination that [he] himself leveled a decade [prior]." *Id.*

without a difference in this case, as none of Lopez's claims (including the present one) have been predicated upon the length of the plea deal. Lopez's claims are all predicated upon his contention that Moreno had been offered a sentence significantly less severe than the life sentence the prosecutor and Moreno both told the jury (thus severely limiting efforts to impeach the credibility of Moreno's damaging testimony). Lopez has never emphasized the precise length of the promised sentence; instead his focus has always been on the fact that the agreed-upon sentence (whatever length it might be) was significantly better than life imprisonment.

In this regard, we note that Lopez makes no attempt, in either his Fifth PCRA Petition or in his brief in support filed with this Court, to distinguish between the nature of his current claim from those in either his Habeas Petition and/or the Second PCRA Petition. Instead, he argues only that his prior (2005) claims have never been adequately "developed and/or adjudicated" in either the state or federal courts. Lopez's Reply Brief at 5. For purposes of a timeliness determination under the "newly-discovered evidence" exception of the PCRA, however, the issue is whether the facts upon which his current claim is predicated were **unknown** to him within one year of the time when the claim could have been presented. 42 Pa.C.S. § 9545(b)(1)(ii), (2). In this case, the facts upon which Lopez's current claim is based have been known to him since at least 2005,[5] and

---

[5] Lopez's trial took place in March and April of 1996, and thus by 2005 Lopez was obviously aware of the representations made at the trial by the prosecutor and Moreno regarding the "no death penalty" only plea agreement. On July 19, 1996, Moreno was sentenced to twenty to forty years of imprisonment for his participation in the homicide – a fact with which Lopez was also well aware by 2005, as he attached a copy of the transcript of Moreno's sentencing hearing to the Second PCRA Petition. This sentencing transcript disclosed that the twenty to forty year term was the result of a plea agreement between Moreno and the Commonwealth, which the trial court conditionally accepted on

therefore his Fifth PCRA Petition is patently untimely. He merely cites to a newly identified source in further support for these previously known facts.

We likewise reject Lopez's contention that the PCRA court erred by dismissing his petition without an evidentiary hearing. Pennsylvania Rule of Criminal Procedure 909 provides that the PCRA court has the discretion to dismiss a petition without a hearing when the court is satisfied "that there are no genuine issues concerning any material fact, the defendant is not entitled to post-conviction collateral relief, and no legitimate purpose would be served by any further proceedings." Pa.R.Crim.P. 909(B)(2). To obtain relief, the appellant must show that he or she "raised a genuine issue of fact which, if resolved in his favor, would have entitled him to relief, or that the court otherwise abused its discretion in denying a hearing." *Commonwealth v. D'Amato*, 856 A.2d 806, 820 (Pa. 2004). As we have concluded that Lopez's Fifth PCRA Petition was untimely filed and that no genuine issues of fact remain that would entitle Lopez to relief, the PCRA court properly exercised its discretion.

In conclusion, Lopez fails to demonstrate that the facts upon which the claim is predicated were previously unknown to him. Therefore, we affirm the PCRA court's conclusion that it lacked jurisdiction over his claim.

Chief Justice Baer and Justices Saylor, Todd, Dougherty, Wecht and Mundy join the opinion.

---

May 8, 1996 (approximately three weeks after Lopez was sentenced to death on April 17, 1996). *Commonwealth v. Moreno*, No. 1995/2012, at 5 – 6 (sentencing transcript).